1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    LEWIS BOOTH, et al.,                    Case No.  13-cv-04921-JST

              Plaintiffs,
8
                                             **ORDER GRANTING IN PART AND**
9         v.                                 **DENYING IN PART MOTION TO**
                                             **DISMISS**
10   STRATEGIC REALTY TRUST, INC., et
     al.,                                    Re: ECF No. 39.
11
              Defendants.

12   **I.       INTRODUCTION**

13          Plaintiffs Lewis Booth, Trustee of the Booth Trust, and Stephen Drews, Jr. ("Plaintiffs")

14   have filed this proposed class action bringing causes of action for violations of the Securities Act

15   of 1933 ("Securities Act"), 15 U.S.C. § 77a, *et seq*., and common law causes of action for breach

16   of fiduciary duty, unjust enrichment, and negligence.  Amended Complaint for Violations of the

17   Federal Securities Laws and Common Law ("Am. Comp."), ECF No. 38.  Defendant Strategic

18   Realty Trust, Inc. ("SRT"), together with Defendants Jeffrey S. Rogers, Phillip I. Levin, Arthur M.

19   Friedman, Robert N. Ruth and Peter R. Kompaniez (collectively, the "Independent Director

20   Defendants") move to dismiss the Securities Act and breach of fiduciary duty claims alleged

21   against them, as well as the cause of action for unjust enrichment (counts one, two, six and eight

22   of the Amended Complaint).  Motion of Strategic Realty Trust, Inc. and the Independent Director

23   Defendants to Dismiss Amended Complaint ("Mot."), ECF No. 39.  The motion came on for

24   hearing July 24, 2014.

25   **II.      BACKGROUND**

26          **A.       Factual Background**[1]

27   _____

28   [1] The court accepts as true the following facts alleged in the amended complaint for purposes of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs invested in the initial public offering of the common stock of SRT, a real estate

2    investment trust or "REIT". ¶ 1.[2]  The success of this investment depended in large part on the

3    performance of Anthony Thompson, SRT's CEO and Chairman of its Board of Directors and

4    Investment Committee.  Id.  Thompson also directed and controlled the sponsor of the offering,

5    Thompson National Properties, LLC ("TNP"), the real estate firm responsible for implementing

6    SRT's investment strategies, TNP Strategic Advisor, LLP ("TNP Advisors"), and the selling agent

7    for the offering, TNP Securities LLP ("TNP Securities").  Id.

8    Shares in SRT were offered to the public on a continuous basis from August 7, 2009

9    through February 7, 2013.  ¶ 2.  SRT raised over $70 million.  ¶¶ 2, 46.  Thompson and the TNP

10   entities received over $32 million in fees and expense reimbursements from SRT over the same

11   period.  ¶ 55.

12   Plaintiffs invested between December 2011 and February 2012, and they seek to represent

13   similarly situated investors who acquired shares pursuant or traceable to the offering between

14   September 23, 2010 and February 7, 2013.  ¶ 2.  Plaintiffs alleged that SRT failed to provide them

15   with material information that they would have viewed as important in making their investment

16   decision, for at least three reasons.

17   First, Plaintiffs allege that SRT failed to disclose both Thompson and TNP's precarious

18   financial condition.  TNP suffered substantial losses in 2009 and 2010 leaving it with a negative

19   equity of over $29 million.  ¶ 82.  Thompson's condition likewise deteriorated as a result of TNP's

20   troubles.  ¶ 83.  He also suffered losses since he was the primary shareholder of the real estate

21   company Grubb & Ellis, which took heavy losses during the credit crisis and ultimately declared

22   bankruptcy in 2012.  ¶ 83.  Plaintiffs maintain this information should have been disclosed

23   because SRT's debt financing strategy depended upon what amounted to worthless guarantees

24   from Thompson and TNP.  ¶¶ 79-81.

25   Second, Plaintiffs allege that SRT's offering materials touted prior real estate investment

26

27   resolving this motion to dismiss.  See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).
     [2] All "¶" citations are to the amended complaint.

28

2

1  programs as examples of Thompson and TNP's past success, despite the fact that those programs

2  actually suffered negative financial performance from their inception.[3]  ¶¶ 59-68.  They also allege

3  that Thompson and TNP conducted these programs in violation of securities laws because they

4  were offered and sold pursuant to materially inaccurate and incomplete offering documents.  ¶ 58.

5  Plaintiffs maintain this information was material and should have been disclosed because it called

6  into question whether Thompson or the TNP entities were fit to sponsor and manage the SRT

7  offering.  ¶ 96.

8       Lastly, Plaintiffs allege that SRT provided false and misleading information concerning its

9  internal controls over potential conflicts of interest.  ¶ 72.  In the offering materials, SRT

10  acknowledged certain conflicts of interests in its relationship with the TNP entities, but described

11  a number of purported safeguards against these conflicts.  ¶ 73.  Despite these purported

12  protections, Plaintiffs allege that between 2010 and 2012 SRT entered into at least ten property

13  management agreements with TNP entities that SRT later acknowledged "were commercially

14  unreasonable and void under the Company's charter."  ¶¶ 73, 76.  Furthermore, Plaintiffs allege

15  that the company employed a strategy of incurring significant debt backed by worthless guarantees

16  from Thompson and TNP (¶ 79), permitted TNP Advisors to collect significant unearned fees

17  (¶ 87), and allowed Thompson to pursue reckless investments on behalf of SRT for the sole

18  purpose of earning fees for himself, eventually leading the company to default on its credit

19  obligations (¶¶ 90-93).

20       SRT terminated their IPO on February 7, 2013.  ¶ 96.  On April 8, 2013, SRT issued a

21  press release disclosing its ongoing efforts to terminate TNP Advisors and to oust Thompson as

22  CEO.  ¶¶ 97-98.  On July 17, 2013, SRT disclosed that TNP Advisors had permitted SRT's cash

23  reserves to fall below the $4 million floor mandated in their Advisory Agreement.  ¶ 100.  By

24  March 31, 2013, cash reserves had fallen to just $1.1 million with outstanding obligations in

25

26  [3] The Amended Complaint alleges that TNP made misrepresentations with regard to three prior investments: the 2009 Participating Notes Program, LLC; TNP 12% Notes Program, LLC; and the

27  Bruin Fund, L.P.  In their Opposition to Defendants' motion to dismiss, Plaintiffs expressed their intention not to pursue their claims related to the Bruin Fund, L.P.  ECF No. 43, at 9 fn.4.

28

United States District Court
Northern District of California

3

1    excess of $5 million.  Id.

2           On July 30, 2013, the Financial Industry Regulatory Authority, Inc. ("FINRA"), a private

3    corporation that regulates member firms and exchange markets, filed a complaint against

4    Thompson and TNP Securities in connection with a series of note offerings referenced in SRT's

5    offering materials, alleging material misrepresentations and omissions in violation of the

6    Securities Act.  ¶ 101.  On August 12, 2013, SRT issued a press release announcing that it had

7    "severed" its relationship with TNP Advisors, appointed a new CEO to replace Thompson, and

8    planned to change its name to Strategic Realty Trust, Inc.  ¶ 102.

9           **B.    Procedural History**

10          Plaintiffs filed an action against Defendants in the Central District of California on

11   September 23, 2013.  Mot. 2, n.1; Plaintiffs' Opposition to Strategic Realty Trust, Inc. and the

12   Independent Director Defendants' Motion to Dismiss Amended Complaint ("Opp.") 5, ECF No.

13   43.  Plaintiffs, SRT and the Independent Director Defendants subsequently agreed the action

14   would be dismissed without prejudice and re-filed in this District, but that September 23, 2013

15   would be considered the filing date for the purposes of the statute of limitations and the statute of

16   repose.  Id.

17          Plaintiffs filed their initial complaint in this court in October 2013.  ECF No. 1.  In January

18   2014, the Court granted Plaintiffs' unopposed motion to appoint them as Lead Plaintiffs and to

19   approve their selection of Lead Counsel pursuant to 15 U.S.C § 77z-1(a)(3)(B).  ECF No. 34.

20   Plaintiffs filed the Amended Complaint in March 2014, naming as defendants SRT, the

21   Independent Director Defendants, Thompson, TNP Securities, TNP Advisors, and three former

22   SRT officers who were also affiliated with TNP entities: Christopher S. Cameron, James R.

23   Wolford, and Jack R. Maurer.  SRT and the Independent Director Defendants[4] filed the instant

24   motion to dismiss in April.  Defendants Thompson, TNP, TNP Advisors and TNP Securities have

25

26   ─────────────────

27   [4] The Independent Director Defendants identify themselves in their motion as "individuals who
     have never been employed by TNP or its subsidiaries but who, at one time or another, sat on the
28   Board [of SRT]."  Mot. 5.

United States District Court
Northern District of California

1    answered.  ECF No. 42.  Defendants Cameron, Wolford and Maurer have yet to appear.[5]

2        **C.      Request for Judicial Notice**

3        SRT and the Independent Director Defendants seek judicial notice of several documents,

4    labeled Exhibits A-E, filed by SRT with the SEC in regards to their offering.  ECF No. 40.

5        The Court may properly take judicial notice of material attached to the complaint and of

6    matters in the public record pursuant to Federal Rule of Evidence 201(b).  See Lee v. City of Los

7    Angeles, 250 F.3d 668, 689 (9th Cir. 2001).  Defendants seek judicial notice of documents filed

8    with the Securities & Exchange Commission ("SEC") and downloaded from their website.  A

9    court may take judicial notice of documents referenced in, but which do not accompany a

10   complaint, where no party questions the documents authenticity.  Branch v. Tunnel, 14 F.3d 449,

11   454 (9th Cir. 1994).  Plaintiffs do not oppose the request for judicial notice.  Furthermore, SEC

12   filings are generally subject to judicial notice.  Dreiling v. Am. Exp. Co., 458 F.3d 942, 946 fn. 2

13   (9th Cir. 2006).  Consequently, Defendants' request for judicial notice of these documents is

14   GRANTED.

15       **D.      Jurisdiction**

16       This Court has jurisdiction over the Securities Act claims pursuant to section 22 of the

17   Securities Act, 15 U.S.C. § 77v, as well as pursuant to 28 U.S.C. § 1331.  This Court also has

18   subject matter jurisdiction over all claims, including the state law claims, under 28 U.S.C.

19   § 1332(d) because it appears that the class is likely to include more than a hundred members and

20   the amount in controversy is likely to exceed $5,000,000, and at least one member of the alleged

21   class is a citizen of a state different from a defendant.

22       **E.      Legal Standard**

23       "A district court's dismissal for failure to state a claim under Federal Rule of Civil

24   Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of

25   sufficient facts alleged under a cognizable legal theory.'"  Conservation Force v. Salazar, 646 F.3d

26

27   ───────────────────────

[5] At the hearing, counsel indicated that some of these three had been in contact with counsel in this
28   action and may be making an appearance soon.

United States District Court
Northern District of California

1   1240, 1242 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

2   1988).

3           On a motion to dismiss, courts accept the material facts alleged in the complaint, together

4   with reasonable inferences to be drawn from those facts, as true.  Navarro v. Block, 250 F.3d 729,

5   732 (9th Cir.2001).  However, "the tenet that a court must accept a complaint's allegations as true

6   is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory

7   statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To be entitled to the presumption of

8   truth, a complaint's allegations "must contain sufficient allegations of underlying facts to give fair

9   notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202,

10  1216 (9th Cir.2011).

11          In addition, to survive a motion to dismiss, a plaintiff must plead "enough facts to state a

12  claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

13  (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a

14  defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  "A claim has facial plausibility when the

15  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

16  defendant is liable for the misconduct alleged."  Id.

## III.    ANALYSIS

18          SRT and the Independent Director Defendants (referred to hereinafter simply as

19  "Defendants") move to dismiss the Securities Act claims, the breach of fiduciary claims, and the

20  "unjust enrichment" claims, brought against them.  The Court addresses each argument in turn.

### A.    Securities Act claims

22          Defendants move to dismiss counts one and two of the complaint, for violations of section

23  11 of the Securities Act, on the grounds that these claims are barred by the act's one-year statute

24  of limitations and three-year statute of repose.

#### 1.    The One-Year Statute of Limitations

26          Claims brought under Section 11 of the Securities Act of 1933 are barred "unless brought

27  within one year after the discovery of the untrue statement or the omission, or after such discovery

28  should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.

United States District Court
Northern District of California

6

United States District Court
Northern District of California

The parties agree that September 23, 2013 is the filing date for purposes of calculating the limitation and repose periods.  Defendants contend that Plaintiffs' Section 11 claims are barred because SRT's own disclosures brought the alleged misrepresentations and omissions underlying these claims to Plaintiffs' attention no later than summer 2012.

"Plaintiffs are considered to have discovered a fact when a 'reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint ... with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'"  F.D.I.C. v. Countrywide Fin. Corp., No. 2:12-cv-4354 MRP (MANx), 2012 WL 5900973, at *3 (C.D. Cal. Nov. 21, 2012) (quoting City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011)).

"As courts in this District have reasoned, the determination of inquiry notice is 'fact intensive' and is usually not appropriate at the pleading stage."  Rafton v. Rydex Series Funds, No. 10-cv-01171-LHK, 2011 WL 31114, at *9 (N.D. Cal. Jan. 5, 2011)[6] (citing In re Bare Escentuals, Inc. Sec. Litig., 745 F.Supp.2d 1052, 1081 (N.D. Cal. 2010) ("the court finds that resolution of the limitations issue is not appropriate at the pleading stage, but must be determined once an evidentiary record has been developed")).  Rafton and Bare Escentuals were Securities Act cases.  But Defendant argues that the authority on which they, and Plaintiffs, rely should more properly be read as limited to Exchange Act cases.

In applying the statute of limitations in an Exchange Act case, the Ninth Circuit noted that "the defendant bears a considerable burden in demonstrating, *at the summary judgment stage*, that the plaintiff's claim is time barred."  Betz v. Trainer Wortham & Co., Inc., 519 F.3d 863, 877 (9th Cir. 2008) cert. granted, judgment vacated sub nom. Tainer Wortham & Co., Inc. v. Betz, 559 U.S. 1103, 130 (2010) (emphasis added).  Betz reversed a district court that had granted summary judgment to defendants on the grounds that the plaintiff's claims were time-barred.

---

[6] The Rafton court used the term 'inquiry notice,' which, for reasons described *infra*, does not appear to be the pertinent inquiry after Merck, but that distinction does not affect the court's holding that it is usually inappropriate to determine at the pleading stage at which point a securities fraud claim has accrued.

United States District Court
Northern District of California

1    In In re Merck & Co. Securities, Derivative & "Erisa" Litigation, 483 F.Supp.2d 407, 423

2  (D.N.J.2007), another Exchange Act case, the district court granted a defendant's motion to

3  dismiss, since the district court concluded that the information relayed to plaintiffs before the

4  limitations period should have alerted the plaintiffs to "the possibility" that defendants had

5  knowingly misrepresented material facts.  The Supreme Court affirmed the Second Circuit's

6  reversal of that decision, holding that the fact that a plaintiff has been alerted to "the possibility" of

7  a securities fraud claim to will not suffice to begin accruing the limitations period.  Instead, the

8  Exchange Act's limitations period "begins to run once the plaintiff did discover or a reasonably

9  diligent plaintiff would have 'discover[ed] *the facts constituting the violation*'—whichever comes

10  first."  Merck & Co., Inc. v. Reynolds, 559 U.S. 633, 653 (2010) (emphasis added).  In other

11  words, a plaintiff might be on "inquiry notice" of the "possibility" of an Exchange Act violation at

12  some point before a reasonably diligent plaintiff would have actually *discovered* the facts

13  constituting the violation.  And the limitations period does not start to run until that later threshold

14  has been crossed.

15    The Supreme Court vacated Betz and remanded the case for further consideration in light

16  of Merck.  130 S.Ct. 2400.  But there is nothing in Merck that in any way undermined Betz's

17  counsel to district courts that, before trial, defendants bear a "considerable burden in

18  demonstrating" the untimeliness of an Exchange Act claim.  To the contrary, if anything, Merck

19  seemed to make defendants' burdens even more onerous, since it shifted the application of

20  "inquiry notice" in plaintiffs' favor.  See generally Betz v. Trainer Wortham & Co., Inc., 610 F.3d

21  1169, 1170 (9th Cir. 2010).

22    Both Merck and Betz analyzed general common-law principles behind the "discovery

23  rule," and statutory text that is very similar in both the Securities and Exchange Acts.  There is no

24  reason to conclude that the either court would take a markedly different approach to determining,

25  at the pleading stage, whether the specific elements of a Securities Act claim have accrued

26    Defendants' primary argument is that Exchange Act claims, unlike Securities Act claims,

27  include scienter as an element of the claim.  In Merck and in City of Pontiac, the courts found the

28  claims timely because the plaintiffs could not yet have been expected to discover facts giving rise

8

to an inference that the defendants had acted with fraudulent intent.  To bring a Securities Act claim, on the other hand, plaintiffs need not learn facts from which it is plausible to infer scienter, but need only know facts from which it is plausible to infer that there has been an actionable misstatement or omission.  The court acknowledges and agrees with that distinction, but it does not alter the fact that the law of the Ninth Circuit strongly favors any legitimate factual disputes over the timeliness of a securities claim being determined by the fact-finder.

Defendants also cite Freidus v. Barclays Bank, PLC, 734 F.3d 132 (2d Cir. 2013) to argue that the Second Circuit has not read Merck to preclude deciding timeliness at the pleading stage. In Freidus, also a Section 11 case predicated upon allegations that a shelf registration statement contained material omissions and misrepresentations, the Second Circuit affirmed the dismissal of an action, affirming the district court's conclusion that those plaintiffs' cause of action accrued from the date Barclay's released certain corrective disclosures.  Id. at 138.  Defendant reads Freidus' rationale as fairly expansive, but the district court order it actually affirmed found the claims untimely because the disclosures contained the "same alleged untruths and omissions" on which Plaintiffs based their claims.  Id.  The Court does not dispute that some issues regarding the limitations period can be resolved at the pleading stage, such as when disclosures are as transparently on-point disclosures as those at issue in Freidus, but the case law of this circuit sets a high bar to dismissal at the pleading stage.

Defendants point to a number of disclosures made more than one year before Plaintiffs filed this action that they say should have alerted Plaintiffs to their claim and started the statute of limitation's running.  Specifically, they contend that disclosures in the documents labeled Exhibits B, D, and E in the Request for Judicial Notice ("RJN") provided sufficient notice.

Exhibit B consists of the original Prospectus filed on August 7, 2009 and contains general disclosures related to the offering.  The Prospectus acknowledges that the offering's success was "dependent on the performance of our sponsor and its affiliates," that SRT's officers may have conflicts of interest because of their relationships with TNP entities, and that these conflicts may cause the officers not to act solely in the best interests of SRT's shareholders.  RJN Exhibit B at 16, 21, 22.

1    Exhibit D is a copy of a July 12, 2012 supplement to the April 12, 2012 Prospectus, which

2    acknowledged that SRT may be forced to find replacements for various TNP entities if their

3    financial health did not "improve significantly."  RJN Exhibit D at 2.  The supplement also

4    detailed the financial peril of three previous TNP-sponsored investments and determined that

5    TNP's "liabilities exceeded its assets by approximately $45 million as of March 31, 2012."  Id. at

6    2-3.

7    Finally, Exhibit E consists of a supplement filed with SEC on August 16, 2012 in which

8    the Independent Director Defendants acknowledged a significant deficiency in their internal

9    controls over financial reporting and payment of fees to TNP entities.  RJN Exhibit E at 6. The

10   supplement concluded however, that no unearned fees had been paid.  Id.

11   At the pleading stage, the question is whether it is *plausible* that these disclosures were

12   insufficient to supply a reasonably diligent plaintiff with the information necessary to plead the

13   Section 11 claims with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.

14   The Court believes it is plausible to infer this from the complaint.

15   The August 7, 2009 Prospectus contains generic disclaimers of risk based on SRT's

16   reliance upon Thompson and TNP, as well as potential conflicts of interest.  It is plausible that,

17   notwithstanding those disclosures, Plaintiffs could nonetheless have lacked sufficient information

18   to bring a viable claim.  The July 12, 2012 and August 16, 2012 disclosures did disclose

19   information that should have alerted a reasonably diligent plaintiff to begin investigating the

20   potential existence of a Section 11 claim.  In particular, Supplement Number Eight specifically

21   acknowledges that SRT "had identified a significant deficiency in our internal control," and "may

22   be unable to maintain adequate controls over our financial processes and reporting in the future."

23   This is very damaging to the potential timeliness of Plaintiffs' claims, and they will have a

24   difficult road to establish the timeliness of that claim.  But it is not implausible that Plaintiffs

25   could have lacked sufficient information to bring a viable Section 11 claim even after learning that

26   the TNP entities' financial health was failing and that SRT had recently identified certain

27   deficiencies in their internal controls.  Just because SRT acknowledged a lack of control in one

28   specific area in summer 2012, it is not necessarily the case that all investors should have known

10

United States District Court
Northern District of California

1    enough to bring a claim that the initial representations about Defendants' internal controls were

2    actionably false or misleading.  Just how much additional time was needed to properly trigger

3    "discovery" under the one-year statute of limitations is a question that is best addressed after the

4    development of a sufficient factual record.

5                                    **2.    The Three-Year Statute of Repose**

6               Section 13 of the Securities Act also contains a three-year statute of repose.  All claims

7    arising under Section 11 of the Act must be brought within three years from the time "the security

8    was bona fide offered to the public."  15 U.S.C. § 77m.  Most courts recognize that a security is

9    "bona fide offered to the public" on the date on which the registration statement for the security is

10   declared effective by the SEC.  See P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 104 (2d

11   Cir. 2004).

12              The securities at issue in this case were offered for sale on a continuous basis through a

13   process known as "shelf registration," pursuant to 17 C.F.R. § 230.415.  In shelf registration,

14   securities are registered for sale on a delayed or continuous basis in order to provide the issuer

15   with the flexibility to vary the structure and terms of the securities on short notice and to take

16   advantage of changing market conditions.  Shelf Registration, SEC Release No. 6499, 1983 WL

17   408321, at *4 (Nov. 17, 1983).  Issuers using the shelf registration process typically file "an initial

18   'shelf' registration statement, which 'includes a 'base' or 'core' prospectus,'" and later "may issue

19   securities under that statement by filing a supplemental prospectus that discloses 'information

20   previously omitted from the prospectus filed as part of [the] effective registration statement.'"

21   New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 114 (2d

22   Cir. 2013) (quoting 17 C.F.R. § 230.424(b)(2)).  "Information disclosed in a supplemental

23   prospectus "shall be deemed to be part of and included in the registration statement."  New Jersey

24   Carpenters, 709 F.3d at 114 (quoting 17 C.F.R. § 230.430B(f)(1)).

25              The initial Registration Statement for the SRT offering was declared effective on August 7,

26   2009.  Any claims founded upon alleged misrepresentations or omissions in the initial offering

27   materials on that date would normally be barred by Section 13.  However, Plaintiffs contend that

28   certain of SRT's subsequent post-effective disclosures provide separate bases upon which they

11

1    may found their claims.

2         Securities regulations require an issuer using shelf registration to file post-effective

3    amendments in three situations.  17 C.F.R. § 229.512(a)(1).  One such situation occurs when a

4    post-effective amendment is necessary in order "[t]o reflect in the prospectus ... facts or events

5    arising after the effective date of the registration statement ... which ... represent a *fundamental*

6    *change* in the information set forth in the registrations statement."  17 C.F.R. § 229.512(a)(1)(ii)

7    (emphasis added).  For the purposes of the statute of repose, "each such post-effective amendment

8    shall be deemed to be a new registration statement . . . and the offering of such securities at that

9    time shall be deemed to be the initial bona fide offering thereof."  17 C.F.R. § 229.512(a)(2).

10        The SEC has noted that "[w]hile many variations in matters such as operating results,

11   properties, business, product development, backlog, management and litigation ordinarily would

12   not be fundamental, major changes in the issuer's operations, such as significant acquisitions or

13   dispositions, would require the filing of a post-effective amendment."  Delayed or Continuous

14   Offering and Sale of Securities, 46 FR 42001-01 at *42007-08.  "Also, any change in the business

15   or operations of the registrant that would necessitate a restatement of the financial statements

16   always would be reflected in a post-effective amendment."  Id.

17        Plaintiffs argue that amendments 5 through 14, filed between December 1, 2010 and

18   December 27, 2012, were made in response to fundamental changes, and thus each reset the

19   statute of repose with regard to misrepresentations or omissions contained therein.  Opp. 6-7.

20   Defendants argue that, if subsequent disclosures were necessary to disclose a "fundamental

21   change," the disclosures must necessarily have provided Plaintiffs with sufficient information

22   about the facts underlying their claims to trigger the "discovery" rule under the one-year statute of

23   limitations.  This reasoning is unpersuasive.  A disclosure may contain misrepresentations or

24   omissions regarding the cause or extent of a fundamental change that form the basis for a

25   plaintiff's claim, and yet simultaneously conceal the cause for alarm that would otherwise compel

26   a reasonably diligent plaintiff to investigate further.

27        The Court acknowledges that the purpose of a statute of repose is to provide offerors with

28   certainty and finality.  But by utilizing "shelf registration," Defendants sacrificed at least some of

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1  that finality in favor of flexibility.  For the purpose of considering this motion to dismiss, the

2  inquiry is whether it is plausible to infer, from the facts alleged, that SRT's post-effective

3  amendments 5 through 14 were made in response to a fundamental change pursuant to 17 C.F.R. §

4  229.512(a)(1)(ii).  Given the apparent financial turbulence that SRT and the TNP entities

5  experienced over the course of the offering, such an inference is plausible.  As a result, resolving

6  whether the statute of repose bars Plaintiffs' claim must also await the development of the factual

7  record.

8      **C.      Breach of Fiduciary Duty**

9      Defendants move to dismiss the breach of fiduciary duty claims against them on the

10  grounds that, under governing Maryland law, these claims must be brought derivatively on behalf

11  of the corporation, rather than as a direct action.[7]

12      Pursuant to the internal affairs doctrine, the characterization of a claim as direct or

13  derivative is governed by the laws of the state in which the corporation is incorporated.  Lapidus v.

14  Hecht, 232 F.3d 679, 682 (9th Cir. 2000).  SRT is a Maryland corporation.  ¶ 16; Opp. 17.

15  Therefore, this Court must apply Maryland law in determining whether plaintiffs' breach of

16  fiduciary duty claim may stand as a direct action.

17

18

19  [7] Defendants also construe this count as bringing a cause of action on behalf of "purchasers, i.e.,
plaintiffs who sue based on representations allegedly made to them while they were deciding

20  whether or not to become owners of a corporation's shares." Mot. 16.  Defendants argue that
Defendants owed no fiduciary duty to these "purchasers," since at that time the purchasers owned

21  no stock in the company.  In their opposition, Plaintiffs state that count six of the Amended
Complaint is "asserted only on behalf of existing shareholders." Opp. 12, n. 5.  Defendants argue

22  that this is inconsistent with the proposed class definition in the Amended Complaint, in which
Plaintiffs seek to represent "all persons and entities who purchased or otherwise acquired the

23  common stock of the Company during the Offering Period, and who were damaged thereby." ¶
39.  The court disagrees.  As the Court reads the Amended Complaint, Plaintiffs seek to represent

24  those who purchased SRT stock, and count six seeks to bring a fiduciary duty claim on behalf of
those stockholders for the harm they suffered *after* they became stockholders, during which time

25  Defendants owed them a breach of fiduciary duty.  The point is moot because the Court will

26  dismiss count six regardless, but if Plaintiffs re-assert the count in any second amended complaint,
they should clarify the nature of their fiduciary duty claims, which post-purchase actions breached

27  Defendants' duties to SRT's then-shareholders, and the relationship between the fiduciary duty
claimants and the membership of the proposed class.

28

United States District Court
Northern District of California

1   Under Maryland law, "[a] shareholder may bring a direct action against the corporation, its

2   officers, directors, and other shareholders to enforce a right that is personal to him." Mona v.

3   Mona Elec. Grp., Inc., 176 Md. App. 672, 697, 934 A.2d 450, 464 (2007).  "To maintain a direct

4   action, the shareholder must allege that he has suffered an injury that is separate and distinct from

5   any injury suffered either directly by the corporation or derivatively by the stockholder because of

6   the injury to the corporation." Id. (internal quotation marks omitted).

7   Maryland law generally sets forth the fiduciary duties directors owe to their shareholders in

8   Section 2-405.1 of the Corporations and Associations Article of the Annotated Code of Maryland.

9   "A director shall perform his duties as a director, including his duties as a member of a committee

10  of the board on which he serves: (1) In good faith; (2) In a manner he reasonably believes to be in

11  the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a

12  like position would use under similar circumstances." Md. Code Ann., Corps. & Ass'ns § 2-

13  405.1.  Subsection 2-405.1(g) prohibits direct actions for breach of such duties unless they arise

14  from a common law source outside of Section 2-405.1.  Maryland courts have recognized only one

15  such exception: where a stockholder class challenged a "cash-out" merger, in which stockholders

16  are forced to accept cash in return for their shares. See Shenker v. Laureate Education, Inc., 983

17  A.2d 408 (Md. 2009).  Other Maryland case law, cited by Defendants and not distinguished by

18  Plaintiffs, recognizes that exception recognized in Shenker is limited to that specific situation.

19  See, e.g., Consortium Atlantic Realty Trust, Inc. v. Plumbers & Pipefitters Nat'l Pension Fund,

20  2013 WL 605865, *6 (Md. Cir. Ct. Feb. 5, 2013).

21  Count Six of Plaintiffs' complaint alleges breach of the "duty of ordinary and reasonable

22  care and good faith." ECF No. 39. These alleged duties fall squarely within the purview of § 2-

23  405.1.  As a result, Maryland law requires that Plaintiffs bring this claim as part of a derivative

24  action.

25  Plaintiffs allege that SRT's directors breached their fiduciary duty to plaintiff shareholders

26  when they allowed Thompson and TNP corporate entities to: pay themselves unearned fees (¶ 87);

27  enter into agreements unfair to SRT (¶¶ 74-75); provide SRT with worthless financial guarantees

28  (¶ 84); and acquire properties on terms outside the company's investment objectives, which

14

1   violated its loan covenants (¶¶ 91-93).  None of these alleged violations constitute injuries to

2   Plaintiffs that are separate and distinct from those suffered by SRT and its shareholders.  Any

3   failure by the Individual Director Defendants to rein in Thompson and the TNP entities hurt SRT

4   as a corporation and its stockholders through diminution in the value of their shares.

5   Consequently, under Maryland law, Plaintiffs may not maintain their breach of fiduciary duty

6   claim against Defendants as a direct action.

7           Moreover, Rule 23.1 of the Federal Rules of Civil Procedure requires that shareholders

8   pursuing a derivative action must "allege with particularity the efforts, if any, made by the plaintiff

9   to obtain the action the plaintiff desires from the directors or comparable authority and, if

10  necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain

11  the action or for not making the effort."  "A shareholder seeking to vindicate the interests of a

12  corporation through a derivative suit must first demand action from the corporation's directors or

13  plead with particularity the reasons why such demand would have been futile."  In re Silicon

14  Graphics, Inc. Sec. Litig., 183 F.3d 970, 989 (9th Cir.1999) (abrogated on other grounds by Reese

15  v. Malone, 747 F.3d 557 (9th Cir. 2014)).

16          Plaintiffs have not pled that they made any effort to obtain the action they seek from the

17  Independent Director Defendants or SRT, nor have they alleged why such a demand would have

18  been futile.  Thus, their action can only be described as a direct claim, in violation of Maryland

19  law.

20          **D.      Unjust Enrichment**

21          Count Eight of Plaintiffs' Amended Complaint, for unjust enrichment, does not state a

22  cause of action.  "In California '[t]here is no cause of action for unjust enrichment. Rather, unjust

23  enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a

24  constructive trust."  Myers–Armstrong v. Actavis Totowa, LLC, 382 Fed. Appx. 545, 548 (9th

25  Cir. 2010) (unpublished) (citing McKell v. Washington Mut., Inc., 142 Cal.App.4th 1457, 1489

26  (2006).  See also Hill v. Roll Intl. Corp, 195 Cal.App.4th 1295, 1307 (2011) ("Unjust enrichment

27  is not a cause of action, just a restitution claim"); Pirozzi v. Apple, Inc., 966 F. Supp. 2d 909, 924

28  (N.D. Cal. 2013) (same); Gaudin v. Saxon Mortgage Servs., Inc., 297 F.R.D. 417, 429 (N.D. Cal.

United States District Court
Northern District of California

1   2013) (same).

2   **IV.    CONCLUSION**

3          Defendants' motion is GRANTED IN PART and DENIED IN PART.  Count Eight is

4   DISMISSED WITH PREJUDICE, since the claim fails as a matter of law.  Count Six of the

5   Amended Complaint is DISMISSED WITHOUT PREJUDICE.  Plaintiffs have leave to file a

6   Second Amended Complaint not later than 21 days from the date of this order which re-asserts

7   Count Six, but only if they can allege new facts not alleged in the Amended Complaint

8   demonstrating that they have an independent, non-derivative breach of fiduciary duty claim

9   cognizable under Maryland law.  With any Second Amended Complaint, Plaintiffs must file a

10  separate document listing the specific factual allegations they have added to the complaint to

11  satisfy this requirement.[8]

12         The motion is DENIED as the Securities Act claims.

13         **IT IS SO ORDERED.**

14  Dated:  July 29, 2014

15                                                      _____
                                                              JON S. TIGAR
16                                                       United States District Judge

17

18

19

20

21

22

23

24

25

26   _____

27   [8] At the hearing, Plaintiffs' counsel indicated they would likely not seek to amend to re-assert these claims.  If Plaintiffs' stipulate to dismissal of count six with prejudice, they may so advise the court.

28

United States District Court
Northern District of California