UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS BOOTH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>STRATEGIC REALTY TRUST, INC., et al.,<br><br>    Defendants. | Case No. 13-cv-04921-JST<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: ECF No. 88 |

Plaintiffs Lewis Booth, Trustee of the Booth Trust, and Stephen Drews ("Plaintiffs") have moved for preliminary approval of a class action settlement in this proposed class action brought under the Securities Act of 1933, 15 U.S.C. 77a, *et seq*. The Court will grant the motion, conditionally certify the settlement class, appoint class counsel and the class representative, direct the distribution of class notice, and make a preliminary determination that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

**I.  Background**

    **A.  Factual Background**

Plaintiffs invested in the initial public offering of the common stock of SRT, a real estate investment trust or "REIT". ¶ 1. The success of this investment depended in large part on the performance of Anthony Thompson, SRT's CEO and Chairman of its Board of Directors and Investment Committee. Id. Thompson also directed and controlled the sponsor of the offering, Thompson National Properties, LLC ("TNP"), the real estate firm responsible for implementing SRT's investment strategies, TNP Strategic Advisor, LLP ("TNP Advisors"), and the selling agent for the offering, TNP Securities LLP ("TNP Securities"). Id.

Shares in SRT were offered to the public on a continuous basis from August 7, 2009 through February 7, 2013. ¶ 2. SRT raised over $70 million. ¶¶ 2, 46. Thompson and the TNP

entities received over $32 million in fees and expense reimbursements from SRT over the same period. ¶ 55.

Plaintiffs invested between December 2011 and February 2012, and the proposed class consists of similarly situated investors who acquired shares pursuant or traceable to the offering between September 23, 2010 and February 7, 2013. ¶ 2.  Plaintiffs alleged that SRT failed to provide them with material information that they would have viewed as important in making their investment decision, for at least three reasons.

First, Plaintiffs allege that SRT failed to disclose both Thompson and TNP's precarious financial condition.  TNP suffered substantial losses in 2009 and 2010 leaving it with a negative equity of over $29 million. ¶ 82.  Thompson's condition likewise deteriorated as a result of TNP's troubles. ¶ 83.  He also suffered losses since he was the primary shareholder of the real estate company Grubb & Ellis, which took heavy losses during the credit crisis and ultimately declared bankruptcy in 2012. ¶ 83.  Plaintiffs maintain this information should have been disclosed because SRT's debt financing strategy depended upon what amounted to worthless guarantees from Thompson and TNP. ¶¶ 79-81.

Second, Plaintiffs allege that SRT's offering materials touted prior real estate investment programs as examples of Thompson and TNP's past success, despite the fact that those programs actually suffered negative financial performance from their inception.  ¶¶ 59-68.  They also allege that Thompson and TNP conducted these programs in violation of securities laws because they were offered and sold pursuant to materially inaccurate and incomplete offering documents. ¶ 58. Plaintiffs maintain this information was material and should have been disclosed because it called into question whether Thompson or the TNP entities were fit to sponsor and manage the SRT offering. ¶ 96.

Lastly, Plaintiffs allege that SRT provided false and misleading information concerning its internal controls over potential conflicts of interest. ¶ 72.  In the offering materials, SRT acknowledged certain conflicts of interests in its relationship with the TNP entities, but described a number of purported safeguards against these conflicts. ¶ 73.  Despite these purported protections, Plaintiffs allege that between 2010 and 2012 SRT entered into at least ten property

management agreements with TNP entities that SRT later acknowledged "were commercially unreasonable and void under the Company's charter." ¶¶ 73, 76.  Furthermore, Plaintiffs allege that the company employed a strategy of incurring significant debt backed by worthless guarantees from Thompson and TNP (¶ 79), permitted TNP Advisors to collect significant unearned fees (¶ 87), and allowed Thompson to pursue reckless investments on behalf of SRT for the sole purpose of earning fees for himself, eventually leading the company to default on its credit obligations (¶¶ 90-93).

SRT terminated their IPO on February 7, 2013.  ¶ 96.   On April 8, 2013, SRT issued a press release disclosing its ongoing efforts to terminate TNP Advisors and to oust Thompson as CEO.  ¶¶ 97-98.  On July 17, 2013, SRT disclosed that TNP Advisors had permitted SRT's cash reserves to fall below the $4 million floor mandated in their Advisory Agreement.  ¶ 100.  By March 31, 2013, cash reserves had fallen to just $1.1 million with outstanding obligations in excess of $5 million.  Id.

On July 30, 2013, the Financial Industry Regulatory Authority, Inc. ("FINRA"), a private corporation that regulates member firms and exchange markets, filed a complaint against Thompson and TNP Securities in connection with a series of note offerings referenced in SRT's offering materials, alleging material misrepresentations and omissions in violation of the Securities Act.  ¶ 101.  On August 12, 2013, SRT issued a press release announcing that it had "severed" its relationship with TNP Advisors, appointed a new CEO to replace Thompson, and planned to change its name to Strategic Realty Trust, Inc.  ¶ 102.

### B.     Procedural History

Plaintiffs brought this proposed class action, alleging causes of action for violations of the Securities Act, as well as common law causes of action for breach of fiduciary duty, unjust enrichment, and negligence.  ECF No. 1.  The Court granted Plaintiffs Booth and Lewis's motion for appointment as lead Plaintiffs and approved their selection of lead counsel Girard Gibbs.  ECF No. 34.  Plaintiffs filed an amended complaint, ECF No. 38, which Defendants moved to dismiss, ECF No. 39.  The Court denied the motion as to the Securities Act claims, but granted it as to all of Plaintiffs' common law claims.  ECF No. 51.

1    The parties subsequently engaged in mediation before the Hon. Edward Infante (Ret.) on
December 15, 2014. ECF No. 89, Declaration of Daniel C. Girard ("Girard Decl.") at ¶ 6. The
parties did not reach an agreement at the mediation, but under the direction of Judge Infante
continued settlement discussions before finally reaching an agreement on January 16, 2015. Id.
Plaintiffs then filed a stipulation that sought to suspend case deadlines in light of the parties'
proposed settlement. ECF No. 85. Shortly thereafter, Plaintiffs filed the present motion, which
the Court now considers. ECF No. 88.

## II.      Conditional Class Certification

Plaintiffs ask the Court to conditionally certify the proposed class for the purposes of settlement pursuant to Federal Rule of Civil Procedure 23 subsections (a) and (b)(3). Plaintiffs propose a settlement class consisting of: "All persons and entities that purchased or otherwise acquired SRT common stock between September 23, 2010 and February 7, 2013 and who were damaged thereby."

Class certification under Rule 23 is a two-step process. First, Plaintiff must demonstrate that the four requirements of 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes, ___ U.S. ____, 131 S.Ct. 2541, 2551 (2011)).

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is met. Here, by invoking Rule 23(b)(3), Plaintiff must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The party seeking class certification bears the burden of demonstrating by a preponderance of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements under Rule 23(b) are met. See Wal–Mart, 131 S.Ct. at 2551.

### A.      Rule 23(a)(1) — Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

4

impracticable." Numerosity is satisfied here because Plaintiffs state that the proposed class consists of "approximately 3,300 geographically dispersed members, making joinder impracticable." ECF No. 88 at 13.

In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)). "[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Id. (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)).

The Court finds that the class definition contained in the Settlement Agreement satisfies the ascertainability requirement, as the class consists of individuals who purchased SRT stock within a discrete time period. Plaintiffs state in that "SRT and its transfer agent, Phoenix American Financial Services, Inc., have class members' identifying information, including addresses." ECF No. 89, Girard Decl. at ¶ 17. Therefore, the numerosity requirement is satisfied.

**B.     Rule 23(a)(2) — Commonality**

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." Wal-Mart, 131 S. Ct. at 2556 (internal quotations and quotation marks omitted). However, the common contention "must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "'What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" Id. (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

The claims in this class action all stem from allegations that Defendants made material

1   misstatements that affected the value of the common stock purchase by all class members.  Courts
2   regularly hold that commonality is "plainly satisfied in a securities case where the alleged
3   misrepresentations in the prospectus relate to all the investors, because the existence and
4   materiality of such misrepresentations obviously present important common issues." In re
5   IndyMac Mortgage-Backed Sec. Litig., 286 F.R.D. 226, 233 (S.D.N.Y. 2012) (internal quotations
6   and citations omitted).  The commonality requirement is satisfied.

### C. Rule 23(a)(3) — Typicality

In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court finds that the proposed class representatives, Plaintiffs Booth and Drews, are typical of the class they seek to represent.  Both named Plaintiffs purchased shares of SRT common stock during the class period.  Both named Plaintiffs allege damages stemming from the same materially misleading statements made by Defendants.  Therefore, the typicality requirement is satisfied.

### C. Rule 23(a)(4) — Adequacy of Representation

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000).  The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prod.s v. Windsor, 521 U.S. 591, 626, n.20 (1997) (quoting Gen. Tel. Co. of Sw. v.

6

United States District Court
Northern District of California

Falcon, 457 U.S. 147, 158, n.13 (1982)). Among other functions, these requirements serve as ways to determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158, n.13. Adequacy of representation requires two legal determinations: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998).

There is no evidence in the record suggesting that the proposed class representatives or proposed class counsel have a conflict of interest with other class members. The Court finds that named Plaintiffs have and will continue to prosecute this action vigorously on behalf of the class. Named Plaintiffs have secured representation from Girard Gibbs, a firm that "specializes in class action and complex business litigation." ECF No. 89-3 at 2. Plaintiffs' counsel have submitted a firm resume that documents Girard Gibbs' extensive experience in litigating securities cases on behalf of investor classes. See id. The adequacy requirement is therefore satisfied.

**D. Rule 23(b)(3) — Predominance and Superiority**

To certify a Rule 23 damages class, the Court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem, 521 U.S. at 623. "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)). Here, the Court finds that the common questions raised by Plaintiffs' claims predominate over any questions affecting only individual members of the proposed class, as the claims of all class members turn on the allegedly false or misleading

1  representations made by Defendants in common offering documents.

2  Next, "[t]he superiority inquiry under Rule 23(b)(3) requires determination of whether the
3  objectives of the particular class action procedure will be achieved in the particular case." Id., 150
4  F.3d at 1023. Here, because common legal and factual questions predominate over individual
5  ones, the Court finds that the judicial economy achieved through common adjudication makes a
6  class action superior to the alternative procedures for adjudicating the claims of the members of
7  the proposed class.

### E. Conclusion

Because each element of Rule 23 subsection (a) and (b)(3) are satisfied, the Court finds that conditional certification of the proposed settlement class defined below is appropriate.

## III. Appointment of Class Representative and Class Counsel

Because the Court finds that named Plaintiffs Booth and Drews meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives.

In addition, when a court certifies a class, the court must appoint class counsel and must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Additionally, a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' counsel have far vigorously prosecuted this action by investigating the allegations, filing the amended complaint at ECF No. 38, opposing a motion to dismiss at ECF No. 43, propounding and responding to discovery, reviewing over 150,000 pages of documents

1  produced by Defendants, participating in mediation, negotiating the details of the proposed

2  settlement and filing the present motion for preliminary approval.  See Girard Decl., ECF No. 88

3  at ¶ 2.  In addition, Plaintiff's counsel has significant prior experience prosecuting class actions.

4  For these reasons, the Court will appoint Girard Gibbs as Lead Class Counsel pursuant to Federal

5  Rule of Civil Procedure 23(g).

## IV.     Preliminary Approval of the Class Action Settlement

### A.     Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Courts generally employ a two-step process in evaluating a class action settlement.  First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class.  See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  Class Plaintiffs, 955 F.2d at 1276.  Where the parties reach a class action settlement prior to class certification, courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir. 2012) (citation and internal quotation marks omitted).  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "'within the range of possible approval.'"  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quoting Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F. Supp. 2d 561, 570 (E.D. Pa. 2001)).  See also MCL, 4th § 21.632.  (courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the

1  final fairness hearing."). Second, courts must hold a hearing pursuant to Federal Rule of Civil
2  Procedure 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable,
3  and adequate." Here, Plaintiff asks the Court to take the first step in granting preliminary approval
4  to the proposed settlement.

5  Preliminary approval of a settlement is appropriate if "'the proposed settlement appears to
6  be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does
7  not improperly grant preferential treatment to class representatives or segments of the class, and
8  falls within the range of possible approval.'" In re Tableware, 484 F. Supp. 2d at 1079 (quoting
9  Manual for Complex Litigation, Second § 30.44 (FJC 1985)). The proposed settlement need not
10 be ideal, but it must be fair and free of collusion, consistent with a plaintiff's fiduciary obligations
11 to the class. Hanlon, 150 F.3d at 1027) ("Settlement is the offspring of compromise; the question
12 we address is not whether the final product could be prettier, smarter or snazzier, but whether it is
13 fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance
14 the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further
15 litigation; the risk of maintaining class action status throughout the trial; the amount offered in
16 settlement; the extent of discovery completed and the state of the proceedings; the experience and
17 views of counsel; the presence of a governmental participant; and the reaction of the class
18 members to the proposed settlement. Hanlon, 150 F.3d at 1026 (citations omitted). The proposed
19 settlement must be "taken as a whole, rather than the individual component parts" in the
20 examination for overall fairness. Id. Courts do not have the ability to "delete, modify, or
21 substitute certain provisions" because the settlement "must stand or fall in its entirety." Id.

22 **B.   Analysis**

23 Because the settlement was reached prior to class certification, the Court will apply "a
24 higher standard of fairness and a more probing inquiry than may normally be required under Rule
25 23(e)." Dennis, 697 F.3d at 864. Nonetheless, turning to the terms of the settlement proposed by
26 Plaintiffs, the Court concludes that its terms fall within the range of possible approval and grants
27 preliminary approval.
28

The Court finds that the Settlement is "the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." In re Tableware, 484 F. Supp. 2d at 1079. First, nothing in the record suggests the settlement negotiation process was collusive. The settlement was reached at arms-length with the use of professional mediator Hon. Edward Infante (Ret.). ECF No. 89, Girard Decl. ¶ 6. Although this action was settled prior to certification and Defendants do not contest the fee award, the fee award will come from the class settlement, allowing the Court to scrutinize its fairness. Additionally, class members will have an incentive to object to the fee award if they believe it unduly compromises class recovery. Cf. In re Bluetooth Headset Products Liab. Litig., 654 F.3d at 947 (noting that courts should be particularly critical of "clear sailing agreements" that provide "for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class") (internal quotations and citation omitted). Therefore, the Court does not find any suggestion of collusion in the current record.

The settlement amount is adequate when compared to the total potential damages recoverable in the case. The settlement provides the class members with $5 million in damages and SRT stipulates to injunctive relief in the form of internal governance reforms, which the parties state will benefit class members, who remain SRT shareholders. Plaintiffs estimate that class members could have recovered as much as $24,426,086 in damages under the Securities Act, 15 U.S.C. § 77k(e). ECF No. 89, Girard Decl. at ¶ 5. Therefore, the settlement amount that class members will receive before deducting the proposed award of costs and fees is just over 20% of the maximum potential damages that Plaintiffs could have recovered after a full trial.[1] Plaintiffs have submitted as an exhibit to their motion a 2013 report prepared by Cornerstone Research,

---

[1] The Court does not now rule on the adequacy of these proposed cost and fee awards, but notes that such costs would also be deducted from the class recovery after trial if the settlement were not approved. Of the $5 million settlement, Plaintiffs' counsel intend to seek an award of 25% of the settlement funds and costs not to exceed $50,000. Class counsel propose to pay costs not to exceed $24,000 to the claims administrator. ECF No. 88 at 18.

reflecting that the median settlement as a percentage of estimated damages for all securities class action settlements in 2013 for cases with estimated damages of less than $50 million was 15.1%. ECF No. 89-2 at 9.

The Court agrees that the settlement amount falls within the range of permissible approval in light of the "the risk, expense, complexity, and likely duration of further litigation" identified by Plaintiffs in their motion. Plaintiffs note that Defendants' loss causation defense presents a potential hurdle to recovery, as Defendants have argued that "the primary drivers of the decline in value of SRT's share price from $10.00 to $7.11 were costs that were entirely unrelated to the misstatements and omissions alleged in the complaint," and that these costs "were fully disclosed in SRT's filings with the Securities and Exchange Commission." ECF No. 88 at 9-10.

Plaintiffs also direct the Court to Defendants' assets, which the Plaintiffs now contend would present a limit to the amount recoverable after litigation. Although the maximum value of the case is estimated at $24,426,086, Plaintiffs state that the class is composed entirely of individuals who still own SRT stock and "any recovery from SRT itself would simply reduce the value of Class members' investments while jeopardizing SRT's ability to achieve its investment objectives." Id. at 10. Although SRT has two insurance policies that could provide recovery, the policies combined cap at $10 million and one of the policies is a "wasting" policy from which SRT pays its defense costs, which would only increase if litigation were to continue. See ECF No. 89, Girard Decl. at ¶ 4. Plaintiffs also note that recovery from individual Defendants following litigation would prove challenging.

Finally, Plaintiffs urge that the governance reforms agreed to as a result of the settlement provide benefit to class members. Specifically:

> SRT agreed that, in connection with the 2015 annual meeting, the board of directors will recommend amendments to SRT's Articles of Incorporation to: (1) provide that directors may be removed without cause; (2) allow for a special meeting of stockholders to be called upon the written request of the holders of one-third of SRT's voting shares; (3) provide that one-third of the holders of SRT's voting shares constitute a quorum at a meeting of stockholders; and (4) allow for independent directors to fill vacancies resulting from the removal of directors. SRT agreed to include these proposals in its proxy statement and proxy card for the 2015 annual meeting. SRT also agreed to reactivate the investment committee of the

> board to oversee and evaluate investments proposed by SRT's external advisor, to review SRT's investment policies and procedures on an ongoing basis, and to recommend any proposed alterations to such policies and procedures to the board. Lastly, SRT agreed that, in the event that the board of directors begins to compensate its executive officers, it will reactivate the compensation committee to evaluate and oversee such compensation in light of SRT's performance.

ECF No. 89 at ¶ 11. Plaintiffs have not attempted to place a monetary value on these reforms, and so there is no way for the Court to determine the extent, if any, to which these governance reforms enhance class plaintiffs' settlement recovery relative to their potential recovery at trial.

Given the risks posed by continued litigation and the substantial benefits to the class members that will result from the settlement, the Court concludes that "the risk, expense, complexity, and likely duration of further litigation" weigh in favor of certification.

The Court also concludes that the scope of the release of claims by class members in consideration for the settlement in this case is appropriate. Class members will release Defendants:

> from any and all claims, rights, demands, liabilities and causes of action of every nature and description, to the fullest extent that the law permits their release in this Action, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, whether class, derivative or individual in nature, that Class Representatives or any other member of the Settlement Class: (a) alleged in the Complaint or the Action, or (b) could have asserted in any forum that arise out of or are based upon or are related to the allegations, contentions, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or the Action, including without limitation any claims relating to alleged misrepresentations or omissions in connection with (i) the financial condition of Anthony W. Thompson and the Thompson Defendants, the operation of and results achieved by previous real estate investment programs sponsored by Anthony W. Thompson and the Thompson Defendants, and/or (ii) the nature, extent, and efficacy of SRT's internal controls. Notwithstanding the foregoing, the Releasing Parties, through the release in the Settlement, will not release claims relating to the enforcement of the Settlement.

The Ninth Circuit has held that "[a] settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" Hesse v. Sprint Corp.,

598 F.3d 581, 590 (9th Cir. 2010) (quoting Williams v. Boeing Co., 517 F.3d 1120, 1133 (9th Cir.2008)). Because the proposed release only releases claims based on the factual predicate of the complaint, it is permissible.

The proposed settlement does not favor or grant preferential treatment to any member or segment of the class. Experienced counsel for both parties endorse the settlement, weighing in favor of preliminary approval. Counsel have completed sufficient discovery to form an impression of the strengths and weaknesses of the case and "to make an informed decision about settlement." Mego, 213 F.3d at 459 (citation omitted). Plaintiffs' counsel reviewed "approximately 150,000 pages of documents produced by Defendants and several third parties, including Alston & Bird LLP, Keybank, and McGladrey LLP" and analyzed data produced by Defendants with the assistance of an expert. Therefore, the extent of discovery completed and the stage of the proceedings weigh in favor of approving the settlement.

Two factors neither favor nor weigh against settlement. First, given that the class meets the requirements of Rule 23, and that the parties have not identified any individualized issues that might defeat class status in the future, there does not appear to be any risk of losing class action status should the litigation go forward. As the parties acknowledge, "securities fraud cases fit Rule 23 "like a glove." ECF No. 88 at 12 (citing In re Cooper Companies Inc. Sec. Litig., 254 F.R.D. 628, 632 (C.D. Cal. 2009)). This factor is therefore neutral. Likewise, no governmental actor is relevant to this action, rendering that factor immaterial to the settlement approval process.

The Court must wait until the final approval hearing to determine the reaction of the class members to the settlement. The named Plaintiffs favor approval.

The Court finds the parties' agreement with respect to attorneys' fees and service enhancement awards for named Plaintiffs Booth and Lewis falls "within the range of possible approval." The Court will evaluate the requests for fees and service enhancement awards at the final approval hearing, after Plaintiffs' counsel file their motion for fees and costs, and the class has an opportunity to object.

For the foregoing reasons, the Court will preliminarily approve the class action settlement.

## V. Conditional Approval of Notice Plan

The class notice in a Rule 23(b)(3) class action must comport with the requirements of due process. "The plaintiff must receive notice plus an opportunity to be heard and participate in litigation, whether in person or through counsel." Philips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). The notice must be "the best practicable," "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. (citations omitted). "The notice should describe the action and the plaintiffs' rights in it." Id. Rule 23(c)(2)(B) provides, in relevant part:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Additionally, "an absent plaintiff [must] be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." Id.

The parties propose to use Kurtzman Carson Consultants ("KCC") as the claims administrator for the class. ECF No. 89, Girard Decl. ¶ 15. Plaintiffs will send notice by first class mail to all class members who can be identified from the records of SRT and transfer agent Phoenix American Financial Services, Inc. These records combined contain all class members' identifying information. All class members will receive a copy of the notice submitted by Plaintiffs as Exhibit A to the stipulation of settlement. ECF No. 89-1.

The notice form sent to class members states: the nature of the action; the definition of the class; the class claims, issues, and defenses; that the Court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion or objecting to the settlement; the effect of requesting exclusion, objecting to the settlement, or doing nothing in response to the notice; and the binding effect of a class judgment on class members. ECF No. 89-

1, Exhibit A. It includes the contact information of the Court, class counsel, and defense counsel, as well as the date of the final approval hearing. Id.

This is not a claims-made settlement and class members are not required to take any action to share in class funds. ECF No. 89-1 at Exhibit A, ¶¶ 14, 21. Class members who do not opt out will receive a *pro rata* share of the settlement as calculated by reference to the number of shares of SRT common stock that class member acquired during the class period in relation to the shares acquired by all class members during the class period. Id. If any funds remain in the settlement fund after a year of initial distribution, the balance will be redistributed *pro rata* among those class members who have already cashed their checks. ECF No. 89-1 at Exhibit B, 1-2.

The Court finds the parties' notice plan comports with due process requirements. See also Fed. R. Civ. P. 23(c)(2) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."). In addition, the Court will approve the form of the proposed notice, opt-out, and objection procedures, subject to the following alterations:

1. The envelopes in which class members' notice packets are mailed "should be designed to enhance the chance that [they] will be opened." Id. Examples of envelopes that meet this requirement are available at the Federal Judicial Center website, www.fjc.gov.

2. Class members who wish to exclude themselves from the settlement or who object to the settlement need not provide their telephone numbers to KCC to do so. The language at Questions 13, 19, and 23 of the settlement form, ECF No. 89-1 at Exhibit A, should be adjusted accordingly.

3. Class members who wish to object to the settlement shall only be required to send their objections to the Clerk of this Court. See Procedural Guidance for Class Action Settlements, available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance. "All objections will be scanned into the electronic case docket and the parties will receive electronic notices of filing." Id.

4. The parties shall add a statement to the text under Question 21 of the proposed notice form, ECF No. 89-1 at Exhibit A, that instructs class members that the Court is unable to modify the settlement; the Court only has the power to

16

approve or deny it.  Sample language for this statement is available at http://www.cand.uscourts.gov/ClassActionSettlementGuidance.

5. The proposed Notice states under Question 23 that in order for a class member to speak at the hearing, that individual:

> must send a letter saying that it is your 'Notice of Intention to Appear in *Booth et al. v. Strategic Retail Trust et al.*, Case No. 3:13-cv-04921-JST (N.D. Cal.)." You must include your name, address, telephone number and signature, state the position you intend to present at the hearing, list any witnesses you may call to testify and exhibits you intend to introduce into evidence at the hearing and identify all attorneys representing you who will appear at the hearing. Your Notice of Intention to Appear must be sent to the Clerk of the Court, Class Counsel and Defense Counsel at the three addresses provided in the response to question 19 above, and must be received no later than **DATE, 2015**.'

This statement should be stricken from the Notice sent to class members, as this Court does not require objectors to file any notice of their intention to appear at the final approval hearing.

## VI. Conclusion

For the foregoing reasons, the Court hereby:

1. Grants preliminary approval of the settlement;

2. Conditionally certifies the proposed settlement class;

3. Approves the proposed notice program and the content of the notices, as well as the opt-out and objections procedures, with the modifications discussed above;

4. Appoints Booth and Lewis as class representatives;

5. Appoints Girard Gibbs as class counsel; and

6. Sets the final approval hearing for October 15, 2015 at 2:00 p.m., in Courtroom 9, 19th Floor, 450 Golden Gate Avenue, San Francisco, California.  Class Counsel's memorandum of points and authorities in support of final approval, responses to any objections, and application for attorneys' fees, costs, expenses, and service awards shall be filed by September 17, 2015. Within 21 days of the date of this order, notice shall be mailed to all class members.  Class members will have sixty days from the date of this mailing to request exclusion or object to the

17

1 settlement. If any notice packets are returned as undeliverable during this time period, KCC shall
2 use a national address search to update those class members' addresses.
3     IT IS SO ORDERED.
4 Dated: June 28, 2015



JON S. TIGAR
United States District Judge