Daniel C. Girard (State Bar No. 114826)
Dena C. Sharp (State Bar No. 245869)
Adam E. Polk (State Bar No. 273000)
GIRARD GIBBS LLP
601 California Street, 14th Floor
San Francisco, California 94108
Telephone:     (415) 981-4800
Facsimile:      (415) 981-4846
Email:  dcg@girardgibbs.com
Email:  chc@girardgibbs.com
Email:  aep@girardgibbs.com

Attorneys for Plaintiffs Lewis Booth
and Stephen Drews

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS BOOTH, as Trustee for the Booth Trust dated 11-20-96, and STEPHEN DREWS, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>STRATEGIC REALTY TRUST, INC. (f/k/a TNP STRATEGIC RETAIL TRUST, INC.), THOMPSON NATIONAL PROPERTIES, LLC, TNP STRATEGIC ADVISOR, LLC, TNP SECURITIES, LLC, ANTHONY W. THOMPSON, CHRISTOPHER S. CAMERON, JAMES R. WOLFORD, JACK R. MAURER, PHILLIP I. LEVIN, ARTHUR M. FRIEDMAN, JEFFREY S. ROGERS, ROBERT N. RUTH, and PETER K. KOMPANIEZ<br><br>      Defendants. | CASE NO: 13-CV-04921-JST<br><br>**DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Judge: Jon S. Tigar<br>Courtroom: 9<br>Date: October 15, 2015<br>Time: 2:00 p.m. |

## TABLE OF CONTENTS

I.   PROSECUTION OF THE ACTION ............................................................................. 1

    A.   Pre-filing Investigation, Complaints and Motion to Dismiss ........................ 1

    B.   Discovery ...................................................................................................... 3

II.   THE SETTLEMENT ............................................................................................... 5

    A.   Arm's-Length Settlement Negotiations ....................................................... 5

    B.   The Terms of the Settlement and the Plan of Allocation ............................. 6

    C.   Preliminary Approval and Notice to the Settlement Class .......................... 8

    D.   The Settlement is Fair, Adequate, and Reasonable ..................................... 9

        1.   The Strength of Plaintiffs' Case ....................................................... 9

        2.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...... 10

        3.   The Risk of Maintaining Class Action Status Throughout the Trial .................. 11

        4.   The Settlement Amount ................................................................... 11

        5.   The Extent of Discovery Completed and the Stage of Proceedings ................. 13

        6.   The Experience and Views of Counsel ............................................ 13

III.   ATTORNEYS' FEES AND EXPENSES ........................................................... 14

    A.   Attorneys' Fees and Litigation Expenses ................................................. 14

    B.   Plaintiffs' Counsel's Hours, Lodestar and Expenses ................................. 14

    C.   Girard Gibbs' Lodestar, Expenses, and Relevant Experience .................. 16

i

I, Daniel C. Girard, hereby declare under penalty of perjury:

1.      I am an attorney licensed to practice in the Northern District of California. I am a partner at the firm of Girard Gibbs, LLP, Class Counsel for Lead Plaintiffs Lewis Booth and Stephen Drews. I submit this declaration in support of (a) Plaintiffs' Motion for Final Approval and (b) Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses. I have personal knowledge of the facts set forth herein and could competently testify to them if called as a witness.

## I.    PROSECUTION OF THE ACTION

### A.    Pre-filing Investigation, Complaints and Motion to Dismiss

2.      My firm investigated, developed, and drafted the complaint against Defendants based on client interviews, review and analysis of thousands of pages of offering materials, investigation of Strategic Realty Trust, Inc.'s ("SRT") offer and sale of its common stock, SRT's relationship with Anthony W. Thompson ("Thompson") and his affiliated entities (including Defendants Thompson National Properties, LLC, TNP Strategic Advisor, LLC, and TNP Securities, LLC), and analysis of the facts alleged in the Financial Industry Regulatory Authority's action against Thompson.

3.      On September 23, 2013, Plaintiffs filed this lawsuit alleging that SRT's offering materials contained false and misleading statements about Thompson, his affiliated entities, his earlier investment programs, and about SRT's investment strategy, internal controls, and governance mechanisms. The initial complaint, filed in the Central District of California, included causes of action for violations of sections 11, 12(a)(2), and 15 of the Securities Act against SRT, SRT's officers and directors, Thompson and three of Thompson's affiliated entities. *Drews v. TNP Strategic Retail Trust, et al.*, No. SACV13-01488 PA (DFMx) (C.D. Cal. Sept. 23, 2013), ECF No. 1. Plaintiffs re-filed the case in this Court on October 23, 2013. ECF No. 1. No similar class action alleging that SRT's offering materials included false and misleading statements and omissions was filed in any venue. Plaintiffs filed a motion on December 23, 2013 requesting appointment as Lead Plaintiffs and appointment of Girard Gibbs as Lead Counsel. ECF No. 11. The Court granted Plaintiffs' motion on January 27, 2014. ECF No. 34. As Lead Counsel, my firm has directed and supervised necessary, non-

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

duplicative work performed by additional Plaintiffs' Counsel, Peiffer, Rosca, Wolf, Abdullah, Carr & Kane ("Peiffer Rosca").[1]  The work performed by Peiffer Rosa is documented in the Declaration of Alan L. Rosca, which is being filed concurrently with this declaration and accompanying papers.

4.      On March 13, 2014, following further investigation of their claims, Plaintiffs filed the amended complaint which asserted causes of action for breach of fiduciary duty, negligence, and unjust enrichment, in addition to the Securities Act claims. ECF No. 38.

5.      The TNP Defendants (Thompson National Properties, LLC, TNP Strategic Advisor, LLC, TNP Securities, LLC, and Anthony W. Thompson) filed an answer to the amended complaint on April 28, 2015.  ECF No. 41.

6.      SRT and the Independent Director Defendants (Jeffrey S. Rogers, Phillip I. Levin, Arthur M. Friedman, Robert N. Ruth, and Peter R. Kompaniez), filed a motion to dismiss Plaintiffs' amended complaint on grounds that (1) Plaintiffs' Securities Act claims were time-barred under the one-year statute of limitations and three-year statue of repose set forth in section 13 of the Securities Act; (2) Plaintiffs' breach of fiduciary duty claim was barred because it was not asserted derivatively, and, (3) Plaintiffs' unjust enrichment claim could not be pled as a separate cause of action under California law.  ECF No. 39.

7.      My firm took the lead in researching and preparing the opposition to the motion to dismiss, which we filed on May 12, 2014.  ECF No. 43. The Court heard oral argument on the motion on July 24, 2014.

8.      The Court entered an Order granting the motion to dismiss as to Plaintiffs' unjust enrichment and breach of fiduciary duty claims but denying the motion as to Plaintiffs' Securities Act claims on July 29, 2014.  ECF No. 51.  Regarding Defendants' statute of limitations argument, the Court found that Plaintiffs' Securities Act claims survived because "[a]t the pleading stage, the question is whether it is *plausible* that these disclosures were insufficient to supply  reasonably diligent plaintiff with the information necessary to plead the Section 11 claims with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss," but warned that certain disclosures in SRT's

---

[1] Collectively, Girard Gibbs and Peiffer Rosca are referred to in this declaration as "Plaintiffs' Counsel."

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

offering materials were "very damaging to the potential timeliness of Plaintiffs' claims, and they will have a difficult road to establish the timeliness of that claim." *Id.* at 10.  Regarding Defendants' statute of repose argument, the Court similarly found that "resolving whether the statute of repose bars Plaintiffs' claim must also await the development of the factual record." *Id.* at 13.

### B. Discovery

9.     On January 7 and 13, 2014—before the Defendants filed any responsive pleadings—the parties participated in a Rule 26(f) conference and discussed disclosure obligations; discovery issues, including the preservation and production of electronically stored information (ESI);  and scheduling matters.  The initial Rule 26(f) conference was limited because the Court had yet to appoint Lead Plaintiffs, and discovery was stayed pending a ruling on Defendants' anticipated motion to dismiss. Nevertheless, the parties were able to agree on certain scheduling matters including the timing for filing initial disclosures.  The parties likewise discussed preservation of evidence, and the parties confirmed they were unaware of any preservation or disclosure issues relating to ESI.  The parties submitted an initial Joint Rule 26(f) Report to the Court on January 21, 2014 that memorialized their scheduling and preservation discussions.  ECF No. 28.

10.     After the Court issued its Order on the motion to dismiss in July 2014, the parties conducted a second, more comprehensive Rule 26(f) conference and conferred about a discovery plan including the potential production of documents Thompson and the TNP entities previously provided to regulators,  issues pertaining to the parties' respective ESI, and a proposed case schedule.  The parties filed their Rule 26(f) Report and a joint case management statement on August 19, 2014.  ECF No. 60. The parties also negotiated the terms of a protective order and a protocol for the production of ESI, both of which the Court entered as orders.  *See* ECF Nos. 67 & 68.

11.     The Court held an initial case management conference on September 17, 2014. Following the conference, the Court issued a Scheduling Order that, among other things, provided that Plaintiffs' motion for class certification was due January 26, 2015, and that the fact discovery cutoff date was April 9, 2015.  ECF No. 73.  The Court ordered the parties to "take all necessary steps to

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

conduct discovery, compel discovery, hire counsel, retain experts, and manage their calendars so that they can complete discovery in a timely manner . . . ."  *Id.* at 2.

12.     The parties proceeded with discovery.  All parties exchanged initial disclosures under Rule 26(a) by September 19, 2014.  Defendants identified several non-parties who had relevant information in their possession, custody, or control, including Alston & Bird, LLP, which advised SRT on disclosures made in its public filings with the Securities and Exchange Commission.  SRT and the Independent Director Defendants produced two insurance policies with their initial disclosures: (1) a $5 million directors and officers liability insurance policy through XL Specialty Insurance Company (the "XL policy"); and (2) a $5 million "Side A only" insurance policy through National Union Fire Insurance Company of Pittsburgh, Pa. (the "National Union policy").  Plaintiffs immediately began review and analysis of the insurance policies.  Counsel for SRT and the Independent Director Defendants subsequently advised Plaintiffs that (1) XL did not dispute coverage but that the policy was limited and "wasting" due to contributions to defense costs; and, (2) National Union vigorously disputed insurance coverage on the ground that its "Side A only" policy was only triggered in the event that SRT was unable to indemnify its directors and officers as a result of insolvency.

13.     Plaintiffs' Counsel prepared and served two sets of detailed written discovery requests seeking production of documents from SRT and its current and former directors, and the TNP Defendants, respectively.  Defendants responded and made initial productions of approximately 25,000 pages of documents

14.     Based on information obtained from Defendants, Plaintiffs' Counsel prepared and served subpoenas seeking documents from 11 non-parties possessing relevant evidence: (1) Alston & Bird LLP; (2) Bruin Fund, L.P.; (3) DOF IV REIT Holdings, LLC; (4) BGC Partners, Inc.; (5) Glenborough, LLC; (6) Grubb & Ellis Company; (7) KeyCorp; (8) McGladrey LLP; (9) TNP 2008 Participating Notes Program, LLC; (10) TNP 12% Notes Program, LLC; and, (11) TNP Property Manager, LLC.  Plaintiffs' Counsel met and conferred with counsel for the non-parties, which collectively produced approximately 125,000 pages of documents to Plaintiffs.

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

15.     Given the substantial volume of documents produced in a short period of time, Class Counsel requested that Peiffer Rosca assist with and conduct a portion of the document review. Under Class Counsel's supervision and direction, attorneys from Peiffer Rosca reviewed, coded and analyzed documents, memorializing the results of the review in "batch memoranda" drafted and circulated at regular intervals.

16.     SRT served one set of interrogatories and one set of requests for production of documents on Plaintiffs on October 13, 2014.  Plaintiffs' Counsel conferred extensively with each Lead Plaintiff to ensure accurate and complete responses, and timely responded to Defendants' discovery on November 20, 2014.  Counsel for the parties met and conferred on numerous occasions about the parties' discovery responses and document productions over the course of this litigation, as well as case management issues.  Though differences arose during the course of discovery, the parties were able to resolve them without the need for Court intervention.

## II.     **THE SETTLEMENT**

### A.     **Arm's-Length Settlement Negotiations**

17.     Plaintiffs negotiated the settlement with Defendants after more than a year of litigation. While the parties are represented by experienced counsel who conducted the litigation in a professional and cooperative manner, the case was hard-fought and many points and issues relevant to liability, damages, and insurance coverage were strongly disputed.

18.     In accordance with an earlier Order of the Court directing the parties to engage in private mediation after any order upholding all or a portion of Plaintiffs' complaint (ECF No 26), the parties conferred shortly after the Court entered its Order on the motion to dismiss about the potential for resolving the case.   A significant consideration for the parties in determining whether mediation would be productive was National Union's position that its obligation to provide coverage for Plaintiffs' claims was not yet triggered due to the fact that its policy required SRT to provide indemnity to its directors and officers before it applied.  Because of its coverage position, National Union was initially reluctant to attend mediation, but eventually agreed to participate.

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

1  19.  Ultimately, the parties (and both of SRT's insurers) agreed to attend private mediation

2  on December 15, 2014 before an experienced mediator, the Hon. Edward Infante (Ret.).  Though the

3  parties were unable to reach an agreement in December, they continued to negotiate for an additional

4  month under the direction of Judge Infante, and ultimately reached agreement on the basic terms of the

5  settlement on January 16, 2015.  For the next month, the parties negotiated the specific terms of the

6  settlement, and exchanged multiple drafts of the settlement documents, including both the stipulation of

7  settlement and the plan of allocation. The parties agreed to the terms of the settlement in March 2015

8  and all parties executed the stipulation of settlement on April 27, 2015.  A copy of the fully executed

9  stipulation of settlement is attached as **Exhibit 1**.

10  **B.  The Terms of the Settlement and the Plan of Allocation**

11  20.  The settlement agreement provides for a $5 million all cash settlement fund that (after

12  deduction of fees and expenses) will be automatically distributed on a *pro rata* basis to Class members

13  who do not request exclusion.  Also as part of the settlement agreement, SRT agreed to propose or

14  implement several corporate governance reforms concerning the composition and independence of

15  SRT's board of directors and certain SRT board committees.

16  21.  To fund the settlement, Defendants' insurers agreed to pay $5 million into an escrow

17  account ("the Settlement Fund").  The $5 million Settlement Fund will be used to pay taxes, notice and

18  administration costs, and attorneys' fees and expenses of Plaintiffs' Counsel as approved by the Court.

19  The remaining balance after these payments ("Net Settlement Fund") will be distributed to Class

20  members.  The plan of allocation provides that each Class member will receive a *pro rata* share of the

21  Net Settlement Fund in proportion to the amount of SRT common stock acquired by that Class member

22  during the class period.  Because the plan of allocation sets forth a *pro rata* distribution formula, no

23  Plaintiff or Class member will receive preferential treatment as compared to other Class members.

24  22.  With regard to governance measures related to the composition of SRT's board of

25  directors and certain SRT board committees, SRT agreed that in connection with the 2015 annual

26  meeting, the board of directors would recommend amendments to SRT's Articles of Incorporation to:

27  (1) provide that directors may be removed without cause; (2) allow for a special meeting of

28

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

stockholders to be called upon the written request of the holders of one-third of SRT's voting shares; (3) provide that one-third of the holders of SRT's voting shares constitute a quorum at a meeting of stockholders; and (4) allow for independent directors to fill vacancies resulting from the removal of directors.  SRT agreed to include these proposals in its proxy statement and proxy card for the 2015 annual meeting.  In accordance with this agreement, SRT's July 7, 2015 proxy statement shows that its board of directors made the agreed upon recommendations to its shareholders.  SRT's July 7, 2015 proxy statement is attached as **Exhibit 2**.  SRT's annual meeting is scheduled for September 25, 2015, at which time SRT's shareholders will have the opportunity to vote to implement the agreed-on governance reforms.

23.     As an additional governance reform, SRT also agreed to reactivate a presently inactive investment committee of its board of directors that is responsible for analyzing recommended investments, and reviewing and recommending changes to SRT's investment policies and procedures. The reactivated investment committee will oversee and evaluate investments proposed by SRT's external advisor, review SRT's investment policies and procedures on an ongoing basis, and recommend any proposed alterations to such policies and procedures to the board.  In addition, SRT agreed that in the event that the board of directors begins to compensate its executive officers, it will reactivate the compensation committee to evaluate and oversee such compensation in light of SRT's performance.

24.     In exchange for the $5 million Settlement Fund and the governance reforms, Plaintiffs agreed to release Defendants:

> from any and all claims, rights, demands, liabilities and causes of action of every nature and description, to the fullest extent that the law permits their release in this Action, whether known claims or Unknown Claims, whether arising under federal, state, common or foreign law, whether class, derivative or individual in nature, that Class Representatives or any other member of the Settlement Class: (a) alleged in the Complaint or the Action, or (b) could have asserted in any forum that arise out of or are based upon or are related to the allegations, contentions, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or the Action . . . .

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

Because this release precludes Plaintiffs and Class members from bringing future claims based on the same facts underlying the claims asserted in their complaint, the scope of the release is appropriately tailored to Plaintiffs' claims.

25.     As described in the declarations of Lewis Booth and Stephen Drews, which are being filed concurrently, Lead Plaintiffs are informed of and have approved the terms of the settlement. *See* Booth Decl., ¶ 13; Drews Decl., ¶ 13.

### C.     Preliminary Approval and Notice to the Settlement Class

26.     On March 27, 2015, Plaintiffs filed a motion seeking: (1) preliminary approval of the settlement; (2) conditional certification of the settlement Class; (3) appointment of Lead Counsel as Class Counsel; (4) directing distribution of notice of the settlement to the Class; and, (5) scheduling a hearing for final approval of the settlement. ECF No. 88.

27.     On June 28, 2015, the Court issued an Order granting Plaintiffs' motion for preliminary approval, conditionally certifying the settlement Class, appointing Girard Gibbs as Class Counsel, appointing Kurtzman Carson Consultants LLC ("KCC") as the claims administrator, and scheduling a hearing for final approval. ECF No. 97. The Court also directed Class Counsel to distribute notice to the Class subject to five modifications to Plaintiffs' proposed notice. Class Counsel were ordered to:

- Modify the design of the envelopes in which Class members' notice packets were to be mailed to conform with the Federal Judicial Center example envelope and enhance the likelihood that the envelopes would be opened;

- Strike the requirement that Class members who wish to request exclusion from the settlement or object provide their telephone numbers to the claims administrator in order to do so;

- Provide that Class members who wish to object to the settlement need only send their objections to the Clerk of the Court;

- Supplement the notice to instruct Class members that the Court is unable to modify the settlement and that the Court only has the power to approved or deny it; and,

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

- Strike the requirement that, in order to appear at the fairness hearing, Class members must file a notice of intention to appear and send the notice to the Clerk of the Court, Class Counsel, and Defense Counsel.

ECF No. 97 at 16-17.  Class Counsel made each of these alterations to the notice and then supervised the claims administrator's initial dissemination of notice to the Class, which was completed on July 17, 2015.  The final notice that was disseminated to Class members on July 17, 2015 is attached as **Exhibit 3**.

28.     In addition to incorporating the five modifications ordered by the Court and supervising the claims administrator's dissemination of notice to the Class, since July 17, 2015, Class Counsel has monitored Class member reaction to the settlement and both KCC and Class Counsel have communicated with Class members to address questions and requests for information regarding the settlement.

### D.     The Settlement is Fair, Adequate, and Reasonable

#### 1.     The Strength of Plaintiffs' Case

29.     This case involves claims affecting approximately 5,630 investors in SRT's common stock and involves complicated issues surrounding alleged misstatements and omissions SRT made in its filings with the Securities and Exchange Commission.  The claims and defenses are complex, and litigating them would be time consuming, challenging and expensive.  The outcome of continued litigation, including class certification and summary judgment motions, are uncertain. Recovery by means other than settlement would require lengthy and expensive litigation, both as to merits and class certification, and a favorable outcome is uncertain.  Defendants have asserted statute of limitations, statute of repose, and negative causation defenses, all of which threaten to undermine plaintiffs' claims and present substantial hurdles to recovery.  Regarding Defendants' statute of limitations and statute of repose defenses, for example, the Court cautioned that Plaintiffs would "face a difficult road to establish the timeliness" of their Securities Act claims if Defendants sought to dispose of them on a more developed factual record.  ECF No. 51 at 10, 13.  If the case continues, Plaintiffs would be

9

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

required to prevail on these and any other defenses Defendants raise.  By settling this dispute, in contrast, Plaintiffs and Class members achieve immediate, certain, and substantial benefits.

### 2.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

30.    Defendants' ability to pay is limited, and presents an obstacle to further litigation.  As the Class consists almost entirely of investors who still own their shares in SRT, any recovery from SRT itself would simply reduce the value of Class members' investments.  Moreover, pursuing a judgment against the individual Defendants would be time consuming and the prospect of recovering a multi-million dollar judgment from any of them is remote.  Defendants' ability to pay is therefore defined by their available insurance.

31.    Defendants' available insurance assets consist of two insurance policies: (1) the $5 million directors and officers XL Policy; and (2) the $5 million "Side A only" National Union policy.

32.    The XL policy applies but is "wasting."  As of December 15, 2014 (the date of the parties' mediation), defense costs had consumed close to $1 million of the $5 million policy.

33.    National Union contends that the "Side A only" policy does not provide a source of recovery unless and until SRT is unable as a result of insolvency to provide indemnity to its directors and officers.  SRT disagrees with National Union's position and contends that, after exhaustion of the XL Policy, the "Side A Only" policy would be triggered by any adverse judgment, because SRT is prohibited by both public policy and explicit language in its charter from indemnifying its directors and officers for liability imposed under the Securities Act of 1933.

34.    The $5 million settlement fund consists of the $4 million remaining on the XL policy and $1 million from the National Union policy.  National Union contributed to the settlement despite its contention that there is no coverage for Plaintiffs' claims.  This contribution from National Union was only achieved after SRT retained separate coverage counsel who engaged in lengthy and difficult negotiations with National Union.

35.    In view of the limited sources of recovery available, as well as National Union's coverage position, continuing to litigate (rather than settling) would leave Plaintiffs open to the very

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

real risk of recovering nothing even if they ultimately prevailed on establishing liability and proving damages.

### 3.   The Risk of Maintaining Class Action Status Throughout the Trial

36.   Plaintiffs had not yet moved for class certification at the time the parties entered into the settlement.  Defendants have indicated that if the case proceeds, they will actively oppose class certification, including by arguing to narrow the class period by way of the statute of repose.  If Defendants were to successfully oppose class certification, the class would not be entitled to any recovery at all. And even if Plaintiffs succeeded at class certification, Plaintiffs and the certified class would still have faced summary judgment, a trial on the merits, and potentially a post-judgment appeal. The uncertainties and delays associated with all those proceedings would have been significant.

### 4.   The Settlement Amount

37.   The $5 million settlement amount is significant when compared against recoveries in similar securities class actions.  Before attending the mediation, Plaintiffs' Counsel retained Forensic Economics, Inc., finance and economics experts, who helped Plaintiffs estimate damages.  Plaintiffs' experts estimated maximum recoverable damages of $24,426,086 pursuant to the statutory formula set forth in the Securities Act at 15 U.S.C. § 77k(e).  Under the statute, damages for a violation of section 11 are calculated as the difference between the amount paid for the securities and the value of the securities at the time the lawsuit was filed.  According to Plaintiffs' experts and the data in SRT's filings with the Securities and Exchange Commission, there were 8,451,933 shares of SRT common stock acquired by Class members during the Class period, which were all offered to the public at $10 per share.  The total value Plaintiffs and Class members paid for their SRT common stock is therefore $84,519,330.  Plaintiffs estimate that the value of SRT common stock on October 23, 2013—the date this lawsuit was filed—was $7.11 a share, based on an estimate from an independent third party valuation firm that was approved by SRT's board of directors on July 15, 2014.  The estimated value of Plaintiffs' and Class members' SRT common stock at the time the lawsuit was filed is therefore $60,093.243.  Accordingly, Plaintiffs estimate their maximum recoverable damages as $24,426,086

11

1   ($84,519,330 - $60,093,243).  As explained below, however, the maximum recoverable damages

2   number is offset by various defenses available to Defendants.

3        38.     Defendants assert that their negative causation defense results in maximum recoverable

4   damages of $4.5 million.  According to Defendants, the decline in value of SRT's share price from

5   $10.00 to $7.11 was the result of uses of capital by SRT that were not related to the misstatements and

6   omissions alleged in the complaint, including: (1) SRT's transaction costs to acquire property; (2)

7   distributions to SRT's shareholders; and, (3) costs associated with the initial public offering like sales

8   commissions, the dealer manager fee, and other organization and offering expenses.  Defendants state

9   that all of these expenditures were fully disclosed in SRT's filings with the SEC, and also state that the

10  only losses that could possibly be causally related to the misstatements and omissions Plaintiffs allege

11  in the complaint are SRT's losses arising out of the acquisition of the Lahaina property, a transaction

12  recommended by Mr. Thompson and subsequently disavowed by the SRT board.  Defendants contend

13  that losses directly attributable to the Lahaina acquisition reduced the value of Plaintiffs and Class

14  members' shares by only 52 cents.  Defendants accordingly calculate maximum estimated damages at

15  $4.5 million (52 cents times 8.5 million shares sold in the class period).  Had the parties continued

16  litigation this case rather than settling, Defendants' negative causation defense would have presented a

17  difficult obstacle to Plaintiffs' proof of damages.

18       39.     Defendants take the position that the $5 million they have agreed to pay represents more

19  than 100% of the maximum recoverable damages in this case.  Even when measured against Plaintiffs'

20  maximum recoverable damage calculation of $24 million, the settlement represents a recovery of

21  approximately 20% of the Class's estimated maximum recoverable damages, well exceeding the

22  median percentage of recovery in similar securities class actions.  A copy of a report by Cornerstone

23  Research entitled "Securities Class Action Settlements 2014 Review and Analysis" is attached as

24  **Exhibit 4**.  This report shows that for securities class actions with estimated damages of less than $50

25  million between 2005 and 2014, the median settlement as a percentage of estimated damages was

26  11.7%.  In 2014, the median settlement as a percentage of estimated damages was 9.9%.  The median

27

28

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

settlement as a percentage of estimated damages for settlements between 1996 and 2014 involving section 11 and 12(a)(2) claims was 7.3%.

### 5.    The Extent of Discovery Completed and the Stage of Proceedings

40.    The factual record is sufficiently developed to provide Plaintiffs and Class Counsel with an understanding of the strengths and weaknesses of their case and to facilitate an informed settlement decision.  Before entering into the settlement, Plaintiffs gained a thorough understanding of the case through: (1) researching, investigating, and filing an amended complaint; (2) opposing SRT and the Independent Director Defendants' motion to dismiss; (3) propounding and responding to discovery; (4) reviewing approximately 150,000 pages of documents produced by Defendants and several third parties, including Alston & Bird LLP, Keybank, and McGladrey LLP; (5) analyzing, with the assistance of an expert, data produced by Defendants; and, (6) preparing for and participating in mediation.

### 6.    The Experience and Views of Counsel

41.    This settlement is in the best interest of the Class and should be finally approved by the Court.  I base this view on the following:

- The discovery taken in the case to date;
- Evaluation of the strength of the defenses Defendants have asserted and Plaintiffs' possible responses to those defenses;
- Evaluation of the risks involved with continuing to litigate the case, including the risk of dissipating the assets available to Defendants to satisfy any judgment Plaintiffs obtain;
- Evaluation of the benefits Class members receive under the settlement;
- Analysis of the Class members' favorable reaction to the settlement (one request for exclusion and no objections); and,
- My more than 25 years of experience representing plaintiffs in class actions and other complex litigation.

A copy of my firm's resume, which details my experience and the experience of the other lawyers at my firm, is attached as **Exhibit 5**.

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

**III.    ATTORNEYS' FEES AND EXPENSES**

    **A.    Attorneys' Fees and Litigation Expenses**

    42.    This case has at all times been pursued on a fully contingent basis.  Over the course of the litigation, Plaintiffs' Counsel have committed substantial resources to the matter and prosecuted the case without any compensation or guarantee of success.  Based on the result achieved for the class, the extent and quality of the work performed, the risks of the litigation, and the contingent nature of the representation, Plaintiffs' Counsel collectively apply for a fee of $1.25 million, which is 25% of the $5 million settlement fund.  As explained in Plaintiffs' Counsel's accompanying motion, their requested fee award is in accord with the 25% benchmark typically followed by courts in the Ninth Circuit.

    43.    Additionally, Plaintiffs' Counsel collectively seek reimbursement of $44,874.35 in litigation expenses.  The source and amount of litigation expenses are broken down in further detail below.

    **B.    Plaintiffs' Counsel's Hours, Lodestar and Expenses**

    44.    Plaintiffs' Counsel's total hours, lodestar and expenses are as follows:

| FIRM | HOURS | LODESTAR | EXPENSES |
|---|---|---|---|
| **Girard Gibbs LLP** | 1,639.2 | $927,301.50 | $29,622.09 |
| **Peiffer, Rosca, Wolf, Abdullah, Carr & Kane LLP** | 1,085.8 | $511,210.00 | $15,252.26 |
| **Total** | 2,725 | $1,438,511.50 | $44,874.35 |

    45.    Plaintiffs' Counsel spent their professional time on several general categories of litigation activity:

| LITIGATION ACTIVITY | DESCRIPTION | HOURS |
|---|---|---|
| Case Development and Investigation | Conducted client interviews; reviewed and analyzed voluminous filings with the Securities and Exchange Commission; investigated SRT's offer and sale of its common stock and its relationship with Thompson and his affiliated entities; analyzed facts alleged in the actions filed by Financial Industry Regulatory Authority (FINRA) against Thompson and his affiliated entities; contacted FINRA | Girard Gibbs: 270.9<br><br>Peiffer Rosca: 77.6 |

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

| | | |
|---|---|---|
| | regarding potential coordination of efforts. | |
| Court Appearances and Preparation | Prepared for and attended the hearing on SRT and the Independent Director Defendants' Motion to Dismiss, status conferences, the motion of Gregory J. Sherwin to withdraw as counsel of record for Thompson and the TNP entities. Preparation included conferring with defense counsel and, as to the motion to dismiss, extensive further legal and factual research, including analysis of SRT's voluminous offering materials and arguments offered on reply. | Girard Gibbs: 128.3<br><br>Peiffer Rosca: 0 |
| Discovery | Negotiated and prepared two Rule 26(f) Reports and an initial case management conference statement containing a discovery plan; drafted, exchanged, and reviewed initial disclosures; negotiated stipulated ESI and protective orders; propounded document requests on Defendants and several non-parties; responded to requests for written discovery; reviewed documents produced by Defendants and subpoenaed non-parties; prepared and circulated batch memoranda identifying key documents; monitored status of and modified strategy for document review; met and conferred with opposing counsel regarding discovery issues. | Girard Gibbs: 263.0<br><br>Peiffer Rosca: 474.8 |
| Mediation and Settlement | Prepared settlement demand letter; researched and prepared mediation brief (including arguments as to both liability and damages); conducted conferences with opposing counsel regarding mediation and settlement; analyzed the XL Policy and the National Union Policy; researched the viability of National Union's denial of coverage; researched settlement value; retained economics expert to assist in preparation of damages estimate; consulted with expert in preparing damages estimate; reviewed damages estimates developed by Defendants; researched additional defenses available to Defendants on summary judgment and at trial; prepared for and attended mediation; prepared preliminary memorandum of understanding at mediation; conducted conferences with clients after mediation; continued negotiations with counsel for Defendants and carriers for more than a month; prepared, proposed, and negotiated governance reforms; prepared and filed motion for preliminary approval and supporting papers including memorandum of law in support, plan of allocation, and notice (which required substantial legal and factual research, and input from claims administrator); conferred regarding settlement strategy; retained claims administrator; corresponded with claims administrator regarding settlement issues; communicated with Class members via email and telephone about the settlement; prepared motion for final approval, related declaration in support of final approval and other supporting papers. | Girard Gibbs: 516.0<br><br>Peiffer Rosca: 146.6 |
| Meetings and Communications | Conferred with Lead Plaintiffs Booth and Drews regarding key case developments, strategy and settlement decisions; conferred among Plaintiffs' Counsel regarding developments in the case and strategy | Girard Gibbs: 97.0 hours |

15

| | | |
|---|---|---|
| | for advancing the litigation; conferred with opposing counsel regarding case management issues. | Peiffer Rosca: 65.9 |
| Motion Practice, Pleadings, and Legal Research | Researched and prepared multiple drafts of complaint and amended complaint based on review of SRT's offering materials and extensive legal research of appropriate causes of action, research of appropriate venues, and analysis of potential damages and available defenses; researched and prepared motion to be appointed as lead counsel; research and prepared opposition to motion to dismiss (including substantial factual and legal research relating to Defendants' statute of limitations and statute of repose arguments, and the viability of Plaintiffs' breach of fiduciary duty and unjust enrichment claims); review and analysis of the Court's tentative and final Order on the motion to dismiss, including analysis and research of viability of breach of fiduciary duty claim; reviewed and conducted detailed factual and legal analysis of Defendants' answers to the complaint, including asserted defenses. | Girard Gibbs: 341.9<br><br>Peiffer Rosca: 293.6 |
| Strategy and Analysis | Defined and assessed prosecution and case management strategies, including ensuring streamlined, cost-efficient discovery strategies; analysis of Defendants' available assets and defenses; allocated specific tasks to Peiffer Rosca; monitored work performed by Peiffer Rosca; how to divide work amongst counsel, and to ensure efficient, targeted approach to litigation in light of Defendants' limited assets and increasing defense costs. | Girard Gibbs: 22.1 hours<br><br>Peiffer Rosca: 27.3 |
| **Total** | **GG: 1,639.2 hours**<br>**Peiffer Rosca: 1,085.8 hours**<br>**Combined: 2,725 hours** | |

46.     The work performed by Girard Gibbs is set forth in this declaration, and the firm's lodestar and expenses are summarized in **Exhibits 6 and 7** to this declaration.  Declarations and exhibits detailing the work performed by Peiffer Rosca for the benefit of the settlement Class, including Peiffer Rosca's lodestar and expenses, are included in the Declaration of Alan Rosca, which is being filed concurrently.

## C.     Girard Gibbs' Lodestar, Expenses, and Relevant Experience

47.     Girard Gibbs directed the prosecution of this case, and coordinated with Peiffer Rosca to ensure the efficient, non-duplicative prosecution of Plaintiffs and Class members' claims.

16

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

48.     Through September 10, 2015, Girard Gibbs had devoted 1,639.2 hours of professional time to the prosecution of this action.  The total lodestar amount for attorney and paralegal time based on Girard Gibbs' current rates is $927,301.50.  The chart attached as **Exhibit 6** is a summary of the time spent by each attorney and professional support staff of my firm in this litigation, and the lodestar calculation is based on my firm's current billing rates.  For personnel who are no longer employed by Girard Gibbs, the lodestar calculation is based upon the billing rates for his or her final year of employment with the firm.  The chart was prepared from contemporaneous daily time records regularly prepared by my firm, which are available at the request of the Court.

49.     The hourly rates charged by Girard Gibbs for the partners, associates and professional support staff are the same as the regular current rates charged for their services in non-contingent matters, and have repeatedly been accepted and approved in other securities, shareholder, and consumer class cases.  The rates for the Girard Gibbs partners who worked on this case range from $620 to $875 per hour (with a median rate of $690) and the rates for associates who worked on the case range from $350 to $460 (with a median rate of $350).  No adjustment was made, notwithstanding the complexity of the matters involved, the opposition encountered, the preclusion of other employment, the expected delay in payment, or other factors present in this case that might justify a higher rate of compensation.  The services performed by Girard Gibbs were reasonably necessary in the prosecution of Class members' claims, and my firm will continue to devote the resources necessary to ensure that the Settlement Fund is properly distributed to Class members.

50.     Girard Gibbs' lodestar figures do not include charges for expense items.  Expense items are billed separately and those charges are not duplicated in the firm's billing rates.

51.     As detailed in the chart attached as **Exhibit 7**, my firm has incurred a total of $29,622.09 in unreimbursed expenses from inception through September 10, 2015 in connection with the work we performed in this litigation.

52.     My firm's expenses are reflected in the books and records of my firm.  These books and records are prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.  In the compilation of the expense figures, the figures reported

17

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

1   for telephone, Westlaw, outside photocopying, and messenger charges reflect amounts that Girard

2   Gibbs actually paid, with no mark-up.  Reimbursement for airfare is limited to the coach rate.

3          53.     As set forth in the stipulation of settlement and notice to the class, approval of the

4   settlement is independent from approval of Plaintiffs' Counsel's application for award of attorneys'

5   fees and expenses.

6

7          I declare under penalty of perjury that the foregoing is true and correct.  Executed this 17th day

8   of September, 2015 at San Francisco, California.

9

10                                 ___/s/ Daniel C. Girard_____
                                        Daniel C. Girard

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I, Daniel C. Girard, hereby certify that on September 17, 2015, I caused the foregoing document to be filed electronically with the United States District Court for the Northern District of California's through the Court's mandated ECF service. Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 17th day of September at San Francisco, California.


      */s/ Daniel C. Girard*
       Daniel C. Girard

---

19

DECLARATION OF DANIEL C. GIRARD IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL AND PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
CASE NO. 13-CV-04921-JST