UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEWIS BOOTH, et al.,

        Plaintiffs,

    v.

STRATEGIC REALTY TRUST, INC., et al.,

        Defendants.

Case No.  13-cv-04921-JST

**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT**

Re: ECF No. 99

Plaintiffs Lewis Booth, Trustee of the Booth Trust, and Stephen Drews ("Plaintiffs") move for final approval of a class action settlement in this proposed class action brought under the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. 77a, *et seq.*  ECF No. 99.  Plaintiffs also move for an award of attorneys' fees and reimbursement of litigation expenses.  ECF No. 100.  No class member has objected to the settlement, and only one class member has requested exclusion from the settlement class.  ECF No. 99 at 19; ECF No. 105 ¶¶ 9–10.  The Court held a fairness hearing on October 15, 2015.  For the reasons set forth below, the Court will grant the Motion for Final Approval of Class Action Settlement and grant the Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses.

I.      **BACKGROUND**

      A.     **Factual Background**

Plaintiffs invested in the initial public offering of the common stock of Strategic Realty Trust, Inc. ("SRT"), a real estate investment trust or "REIT."  ECF No. 38 ¶ 1.  The success of this investment depended in large part on the performance of Anthony Thompson, SRT's CEO and Chairman of its Board of Directors and Investment Committee.  Id.  Thompson also directed and controlled the sponsor of the offering, Thompson National Properties, LLC ("TNP"), the real

United States District Court
Northern District of California

United States District Court
Northern District of California

1    estate firm responsible for implementing SRT's investment strategies, TNP Strategic Advisor,

2    LLP ("TNP Advisors"), and the selling agent for the offering, TNP Securities LLP ("TNP

3    Securities"). Id.

4         Shares in SRT were offered to the public on a continuous basis from August 7, 2009

5    through February 7, 2013. Id. ¶ 2. SRT raised over $70 million. Id. ¶¶ 2, 46. Thompson and the

6    TNP entities received over $32 million in fees and expense reimbursements from SRT over the

7    same period. Id. ¶ 55.

8         Plaintiffs invested between December 2011 and February 2012, and the proposed class

9    consists of similarly situated investors who acquired shares pursuant or traceable to the offering

10   between September 23, 2010 and February 7, 2013. Id. ¶ 2. Plaintiffs allege that SRT failed to

11   provide them with material information that they would have viewed as important in making their

12   investment decision, for at least three reasons.

13        First, Plaintiffs allege that SRT failed to disclose both Thompson and TNP's precarious

14   financial condition. TNP suffered substantial losses in 2009 and 2010 leaving it with a negative

15   equity of over $29 million. Id. ¶ 82. Thompson's condition likewise deteriorated as a result of

16   TNP's troubles. Id. ¶ 83. He also suffered losses since he was the primary shareholder of the real

17   estate company Grubb & Ellis, which took heavy losses during the credit crisis and ultimately

18   declared bankruptcy in 2012. Id. Plaintiffs maintain this information should have been disclosed

19   because SRT's debt financing strategy depended upon what amounted to worthless guarantees

20   from Thompson and TNP. Id. ¶¶ 79–81.

21        Second, Plaintiffs allege that SRT's offering materials touted prior real estate investment

22   programs as examples of Thompson and TNP's past success, despite the fact that those programs

23   actually suffered negative financial performance from their inception. Id. ¶¶ 59–68. Plaintiffs

24   also allege that Thompson and TNP conducted these programs in violation of securities laws

25   because the programs were offered and sold pursuant to materially inaccurate and incomplete

26   offering documents. Id. ¶ 58. Plaintiffs maintain this information was material and should have

27   been disclosed because it called into question whether Thompson and the TNP entities were fit to

28   sponsor and manage the SRT offering. Id. ¶ 96.

2

United States District Court
Northern District of California

Lastly, Plaintiffs allege that SRT provided false and misleading information concerning its internal controls over potential conflicts of interest.  Id. ¶ 72.  In the offering materials, SRT acknowledged certain conflicts of interest in its relationship with the TNP entities, but described a number of purported safeguards against these conflicts.  Id. ¶ 73.  Despite these purported protections, Plaintiffs allege that between 2010 and 2012, SRT entered into at least ten property management agreements with TNP entities that SRT later acknowledged "were commercially unreasonable and void under the Company's charter."  Id. ¶¶ 73, 76.  Furthermore, Plaintiffs allege that the company employed a strategy of incurring significant debt backed by worthless guarantees from Thompson and TNP (Id. ¶ 79), permitted TNP Advisors to collect significant unearned fees (Id. ¶ 87), and allowed Thompson to pursue reckless investments on behalf of SRT for the sole purpose of earning fees for himself, eventually leading the company to default on its credit obligations (Id. ¶¶ 90–93).

SRT terminated their IPO on February 7, 2013.  Id. ¶ 96.  On April 8, 2013, SRT issued a press release disclosing its ongoing efforts to terminate TNP Advisors and to oust Thompson as CEO.  Id. ¶¶ 97–98.  On July 17, 2013, SRT disclosed that TNP Advisors had permitted SRT's cash reserves to fall below the $4 million floor mandated in their Advisory Agreement.  Id. ¶ 100.  By March 31, 2013, cash reserves had fallen to just $1.1 million with outstanding obligations in excess of $5 million.  Id.

On July 30, 2013, the Financial Industry Regulatory Authority, Inc. ("FINRA"), a private corporation that regulates member firms and exchange markets, filed a complaint against Thompson and TNP Securities in connection with a series of note offerings referenced in SRT's offering materials, alleging material misrepresentations and omissions in violation of the Securities Act.  Id. ¶ 101.  On August 12, 2013, SRT issued a press release announcing that it had "severed" its relationship with TNP Advisors, appointed a new CEO to replace Thompson, and planned to change its name to Strategic Realty Trust, Inc.  Id. ¶ 102.

B.      Procedural History

Plaintiffs brought this proposed class action, alleging causes of action for violations of the Securities Act, as well as common law causes of action for breach of fiduciary duty, unjust

3

1    enrichment, and negligence.  ECF No. 1.  The Court granted Plaintiffs Booth and Lewis's motion

2    for appointment as lead Plaintiffs and approved their selection of lead counsel Girard Gibbs.  ECF

3    No. 34.  Plaintiffs filed an amended complaint, ECF No. 38, which Defendants moved to dismiss,

4    ECF No. 39.  The Court denied the motion as to the Securities Act claims, but granted it as to all

5    of Plaintiffs' common law claims.  ECF No. 51.

6        The parties subsequently engaged in mediation before the Hon. Edward Infante (Ret.) on

7    December 15, 2014.  ECF No. 89, Declaration of Daniel C. Girard ¶ 6.  The parties did not reach

8    an agreement at the mediation, but under the direction of Judge Infante continued settlement

9    discussions before finally reaching an agreement on January 16, 2015.  Id.  Plaintiffs then filed a

10   stipulation that sought to suspend case deadlines in light of the parties' proposed settlement.  ECF

11   No. 85.  Shortly thereafter, Plaintiffs filed a motion for preliminary approval of the class action

12   settlement.  ECF No. 88.  On June 28, 2015, the Court granted that motion, conditionally certified

13   the settlement class,[1] appointed class counsel and the class representative, directed the distribution

14   of class notice, and made a preliminary determination that the settlement was "fair, reasonable,

15   and adequate" under Fed. R. Civ. P. 23(e)(2).  ECF No. 97.  On September 17, 2015, Plaintiffs

16   filed a motion for final approval of the class action settlement, ECF No. 99, and a motion for an

17   award of attorneys' fees and reimbursement of litigation expenses, ECF No. 100, which motions

18   the Court now considers.

19       **C.    The Proposed Settlement**

20       The proposed settlement will dispose of all of Plaintiffs' claims against all Defendants.

21   ECF No. 99 at 6; ECF No. 101-1.  The settlement agreement defines the class as: "all persons and

22   entities that purchased or otherwise acquired SRT common stock between September 23, 2010

23   and February 7, 2013 and who were damaged thereby."  ECF No. 101-1 at 14.  Pursuant to the

24   agreement, Defendants will create a Settlement Fund of $5,000,000, which will be used to pay

25   taxes, notice and administration costs, and Plaintiffs' approved attorneys' fees and litigation costs.

26

27   _____

28   [1] The class consisted of: "All persons and entities that purchased or otherwise acquired SRT common stock between September 23, 2010 and February 7, 2013 and who were damaged thereby."  ECF No. 97 at 4.

United States District Court
Northern District of California

1    Id. at 16.  The balance remaining in the Settlement Fund will be distributed to class members

2    based on the Plan of Allocation submitted by Class Counsel.[2]  Id. In addition, SRT has agreed to

3    propose or implement certain corporate governance measures.  ECF No. 99 at 7; ECF No. 89-1,

4    Ex. C.  In return for accepting the settlement, Plaintiffs have agreed to release Defendant from:

5              any and all claims, rights, demands, liabilities and causes of action
            of every nature and description, to the fullest extent that the law
6              permits their release in this Action, whether known claims or
            Unknown Claims, whether arising under federal, state, common or
7              foreign law, whether class, derivative or individual in nature, that
            Class Representatives or any other member of the Settlement Class:
8              (a) alleged in the Complaint or the Action, or (b) could have asserted
            in any forum that arise out of or are based upon or are related to the
9              allegations, contentions, transactions, facts, matters or occurrences,
            representations or omissions involved, set forth, or referred to in the
10             Complaint or the Action, including without limitation any claims
            relating to alleged misrepresentations or omissions in connection
11             with (i) the financial condition of Anthony W. Thompson and the
            Thompson Defendants, the operation of and results achieved by
12             previous real estate investment programs sponsored by Anthony W.
            Thompson and the Thompson Defendants, and/or (ii) the nature,
13             extent, and efficacy of SRT's internal controls. . . .

14   ECF No. 101-1 at 15.

15        **D.    Jurisdiction**

16        This Court has jurisdiction pursuant to section 22 of the Securities Act, 15 U.S.C. § 77v, as

17   well as pursuant to 28 U.S.C. § 1331.

18   **II.    FINAL APPROVAL OF SETTLEMENT**

19        **A.    Legal Standard**

20        "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

21   approval."  Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class

22   settlement under Rule 23(e)."  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998).  In

23   addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is

24   fundamentally fair, adequate, and reasonable."  Id. at 1026.  To assess a settlement proposal, the

25

26

27   _____
    [2] Under the Plan of Allocation, class members who do not opt out will receive a pro rata share of
    the settlement as calculated by reference to the number of shares of SRT common stock that class
28   member acquired during the class period in relation to the shares acquired by all class members
    during the class period.  ECF No. 101-3, Ex. A

United States District Court
Northern District of California

5

1   district court must balance a number of factors:[3]

2          the strength of the plaintiffs' case; the risk, expense, complexity, and

3   likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement;

4   the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental

5   participant; and the reaction of the class members to the proposed settlement.

6   Id.

7       **B.**    **Analysis**

8       As discussed below, the Court finds that the class members have received adequate notice

9   and that the proposed settlement is fair, adequate, and reasonable.[4]

10   

11   [3] As the American Law Institute notes in its recently-published <u>Principles of the Law of Aggregate Litigation</u>, "[t]he current case law on the criteria for evaluating settlements is in disarray."  It

12   explains:

13       Courts articulate a wide range of factors to consider, but rarely discuss the significance to be given to each factor, let alone why a

14   particular factor is probative.  Factors mentioned in the cases include, among others, the risks of establishing liability; the risks of

15   establishing damages; the likelihood of recovery at trial; the likely amount recoverable at trial; the public interest served by the

16   settlement; whether the negotiations were at arm's length; the experience of counsel; the views of counsel; the expense,

17   complexity, and likely duration of further litigation; the risk of not maintaining class-certification status throughout trial; the ability of

18   the defendant to withstand a larger judgment at trial; whether a governmental entity participated in the negotiations or approved the

19   settlement; the nature and extent of objections to the settlement; the reasonableness of the proposed attorneys' fees; the extent of

20   discovery completed; the stage of proceedings; the extent of opt-outs; the vigor with which the case was prosecuted; evidence of

21   coercion or collusion that may have marred the negotiations; and the strength of plaintiffs' case.

22   <u>Principles of the Law of Aggregate Litigation</u> § 3.05 comment a (2010).  The ALI further notes that these problems are compounded by the fact that "[m]any of these criteria may have

23   questionable probative value in various circumstances."

24   In light of these concerns, the Rule 23 Subcommittee of the Advisory Committee on Civil Rules is considering whether to propose the addition to Rule 23 of criteria for the approval of class

25   settlements.  <u>See</u> R. Marcus, "Once More Unto The Breach? Further Reforms Considered for Rule 23," 99 Judicature 57, 60-61(Summer 2015).  This Court would welcome such an amendment,

26   which would bring needed order, uniformity, and perhaps greater rigor to the settlement approval process.

27   

28   [4] Based on the Court's previous reasoning, the Court also finds that the scope of the Settlement Agreement's release is permissible because it "only releases claims based on the factual predicate

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Adequacy of Notice

The Court previously approved, with alterations, the parties' proposed plan for providing notice to the class.  ECF No. 97 at 15–17.  Plaintiffs have shown that the claims administrator has fulfilled the notice plan by mailing notice to class members via first class mail and mailing a second notice to an updated address provided by the United States Postal Service to class members whose initial notice was returned as undeliverable.  ECF No. 101, Declaration of Daniel C. Girard ("Girard Decl.") ¶ 27; ECF No. 105, Declaration of Justin R. Hughes ("Hughes Decl.") ¶ 2–6.  As of September 17, 2015, only 13 notices (representing 0.4% of the class) remain undelivered due to the claims administrator's inability to identify a current mailing address.  Hughes Decl. ¶ 6 n.2; ECF No. 99 at 10.

As the Court required in its Order Granting Preliminary Approval of Class Action Settlement, ECF No. 97 at 16–17 (stating court-ordered alterations to the proposed notice plan), the parties modified the notice form by (1) designing the envelopes in which Class members' notice packets were mailed to conform with the Federal Judicial Center example envelope, which enhanced the likelihood that the envelopes would be opened; (2) striking the requirement that class members who wished to be excluded or who objected provide their telephone numbers; (3) notifying objectors that they need only send their objections to the Clerk of the Court; (4) instructing class members that the Court is unable to modify the settlement and only has the power to approve or deny it; and (5) striking the requirement that objectors must file a notice of their intention to appear at the final approval hearing.  Girard Decl. ¶ 27; ECF No. 101-3, Notice of Pendency of Class Action and Proposed Settlement.

In light of the foregoing, the Court concludes that the parties have provided the best practicable notice to class members.  See Boring v. Bed Bath & Beyond, No. 12-CV-05259-JST, 2014 WL 2967474, at *1 (N.D. Cal. June 30, 2014) (finding adequate notice where parties implemented approved notice plan and only "twenty-seven of the 1,374 class notices [representing 1.97% of the notices initially sent] were returned undeliverable after a second attempt and a skip trace.").

_____

of the complaint."  ECF No. 97 at 13–14.

#### 2. Fairness, Adequacy, and Reasonableness

##### a. Strength of Plaintiffs' case

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Plaintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims, especially given Defendants' potential negative causation and statute of limitations defenses. ECF No. 99 at 12–13; ECF No. 51 at 10 (Plaintiffs "will have a difficult road to establish the timeliness of [their section 11] claim."); ECF No.88 at 11. These weaknesses weigh in favor of approving the settlement. See Moore v. Verizon Commc'ns Inc., No. C 09-1823 SBA, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of the defendant's case favored settlement because plaintiffs admitted they would face hurdles in establishing class certification, liability, and damages).

##### b. Risk of continued litigation

Difficulties and risks in litigating weigh in favor of approving a class settlement. See Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009).

This factor supports final approval of the settlement because if the parties did not settle, Plaintiffs would have to proceed through class certification, summary judgment, and trial. In particular, Plaintiffs persuasively argue that absent settlement Plaintiffs' potential recovery would be limited by Defendants' available insurance policies given that the class is composed almost entirely of individuals who still own shares in SRT and that any recovery from SRT itself would simply reduce the value of these investments. ECF No. 99 at 14. As the Court previously noted, SRT has two insurance policies with a combined cap of $10 million. ECF No. 97 at 12. One of the policies is a "wasting" policy from which SRT pays its defense costs, which would only increase if litigation were to continue. Id. Accordingly, the Court concludes that the class members' risk of not being able to fully recover damages from Defendants, even assuming that Plaintiffs succeeded in proving liability, favors approval of the settlement.

8

### c.    Settlement amount

The settlement will provide class members with $5 million in damages, excluding attorneys' fees and litigation expenses.  Plaintiffs argue that their maximum potential damages after trial would be approximately $24.4 million.  ECF No. 99 at 16.  As a result, Plaintiffs claim that the settlement would result in an approximately 20% recovery of the maximum recoverable damages.  Id.

Plaintiffs have submitted a report prepared by Cornerstone Research, indicating that in securities class action cases between 2005 and 2014, the median settlement involving estimated damages of less than $50 million was 11.7% of the estimated damages.  Girard Decl., Ex. 4 at 9.  In 2014, the median settlement was 9.9%.  The Court concludes that the approximately 20% recovery provided for by the proposed settlement weighs in favor of approval, especially when compared to the settlement amounts approved in other securities class action cases.

### d.    Extent of discovery

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).  However, the extent of discovery completed supports approval of a proposed settlement especially when litigation has "proceeded to a point at which both plaintiffs and defendants ha[ve] a clear view of the strengths and weaknesses of their cases."  McKee Foods, 716 F. Supp. 2d 851–52 (internal quotation marks omitted).

Here, Plaintiffs argue they have acquired a sufficient understanding of the case by, among other things, "reviewing more than 150,000 pages of documents produced by Defendants and non-parties," "analyzing, with the assistance of an expert, data produced by Defendants," "preparing for and participating in mediation," and "negotiating the details of the Settlement Agreement for over two months."  ECF No. 99 at 18 (citing Girard Decl. ¶ 40).  The Court is persuaded that Plaintiffs have conducted sufficient discovery to make an informed decision regarding the adequacy of the settlement.  See In re Omnivision, 559 F. Supp. 2d at 1042 (finding the parties were sufficiently informed about the case prior to settling because they engaged in discovery, took

1    depositions, briefed motions, and participated in mediation).  This factor therefore weighs in favor

2    of approval.

3                          **e.       Counsel's experience**

4             "The recommendations of plaintiffs' counsel should be given a presumption of

5    reasonableness."  Id. at 1043 (citation omitted).[5]

6             Lead class counsel here, who has more than 25 years of class action experience, endorses

7    the settlement as fair, adequate, and reasonable.  Girard Decl. ¶ 41.  The Court is not aware of any

8    evidence to contradict this assertion.  Accordingly, class counsel's endorsement weighs in favor of

9    approving the settlement.  See, e.g., In re Omnivision, 559 F. Supp. 2d at 1043 (finding class

10   counsel's recommendation in favor of settlement presumptively reasonable, as counsel

11   demonstrated knowledge about the case and securities litigation in general).

12                         **f.       Reaction of the class**

13            Class members' positive reaction to a settlement weighs in favor of settlement approval;

14   "the absence of a large number of objections to a proposed class action settlement raises a strong

15   presumption that the terms of a proposed class settlement [] are favorable to the class members."

16   Id. (citation omitted).

17            As of September 15, 2015, of 2,919 class members, no class member has objected to the

18   settlement, and only one has opted out.[6]  Hughes Decl. ¶¶ 9–10.  No class members appeared at

19   the fairness hearing.  Class members appear to have concluded as a group that the settlement is

20   favorable to their interests.  See, e.g., McKee Foods, 716 F. Supp. 2d at 852 (finding that 4.86%

21

22   ───────────────────
     [5] The Court considers this factor, as it must, but gives it little weight.  "Although a court might
23   give weight to the fact that counsel for the class or the defendant favors the settlement, the court
     should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less
24   than a strong, favorable endorsement."  Principles of the Law of Aggregate Litigation, supra,
     § 3.05 comment a.
25
     [6] Although one individual did submit a written objection to the settlement, ECF No. 98-1, the
26   claims administrator has confirmed that this individual is not an SRT investor and is therefore not
     a class member.  Hughes Decl. ¶ 10.  As a result, the Court need not address this individual's
27   objections to the settlement.  Custom LED, LLC v. Ebay, Inc., No. 12-cv-00350-JST, 2014 WL
     2916871, at *6 (N.D. Cal. June 24, 2014) ("One must be an aggrieved class member to object to a
28   class action settlement; to be an aggrieved class member, an individual must fall within the class
     definition and also must have been injured by the defendant's conduct.")

United States District Court
Northern District of California

1   opt-out rate strongly supported approval); Churchill Vill. LLC v. Gen. Elec., 361 F.3d 566, 577

2   (9th Cir. 2004) (approving a settlement with forty-five objections and 500 opt-outs from a 90,000-

3   person class, representing 0.05% and 0.56% of the class, respectively).[7]

4         After reviewing these factors, the Court finds the settlement fair, reasonable, and adequate,

5   and grants Plaintiffs' motion for final approval of the settlement.

6   **III.   FINAL APPROVAL OF PLAN OF ALLOCATION**

7         "Approval of a plan of allocation of settlement proceeds in a class action . . . is governed

8   by the same standards of review applicable to approval of the settlement as a whole: the plan must

9   be fair, reasonable and adequate." In re Omnivision, 559 F. Supp. 2d at 1045 (internal quotation

10  marks and citation omitted). "It is reasonable to allocate the settlement funds to class members

11  based on the extent of their injuries or the strength of their claims on the merits." Id.

12        The plan of allocation proposed here meets these requirements. Under the plan, "[e]ach

13  Class member will receive a *pro rata* share of the net settlement fund determined by reference to

14  the number of shares of SRT common stock acquired by the Class member during the class period

15  in relation to the total number of shares acquired by all Class members during the class period."

16  ECF No. 99 at 20; ECF No. 101-3 at 8. Such a plan "fairly treats class members by awarding a

17  pro rata share" to each class member. In re Heritage Bond Litig., No. 02-ML-1475 DT, 2005 WL

18  1594403, at *11 (C.D. Cal. June 10, 2005). Accordingly, the Court approves Plaintiffs' proposed

19  plan of allocation.

20  **IV.   ATTORNEYS' FEES**

21       **A.   Legal Standard**

22        "While attorneys' fees and costs may be awarded in a certified class action where so

23  authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent

24  obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

25

26  [7] The Court finds that two factors neither favor nor weigh against settlement. As the court
    previously noted, "given that the class meets the requirements of Rule 23, and that the parties have
27  not identified any individualized issues that might defeat class status in the future, there does not
    appear to be any risk of losing class action status should the litigation go forward." ECF No. 97 at
28  14. Second, "no governmental actor is relevant to this action, rendering that factor immaterial to
    the settlement approval process." Id.

United States District Court
Northern District of California

1   already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th

2   Cir. 2011).  "Where a settlement produces a common fund for the benefit of the entire class," as

3   here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery

4   method" to determine the reasonableness of attorneys' fees.  Id. at 942.  "Because the benefit to

5   the class is easily quantified in common-fund settlements," the Ninth Circuit permits district

6   courts "to award attorneys a percentage of the common fund in lieu of the often more time-

7   consuming task of calculating the lodestar."  Id.  "Applying this calculation method, courts

8   typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing

9   adequate explanation in the record of any 'special circumstances' justifying a departure."  Id.

10   **B.      Analysis**

11   Plaintiffs' Counsel moves the Court for $1,250,000 in attorneys' fees, representing 25% of

12   the overall $5 million settlement fund.  ECF No. 100 at 1.  After careful review of Class Counsel's

13   declarations and filings, the Court concludes that awarding $1,250,000 in attorneys' fees to Class

14   Counsel is reasonable.  First, the 25% award requested by Class Counsel is equal to the

15   "benchmark" percentage for a reasonable fee award in the Ninth Circuit.  See In re Bluetooth

16   Headset Prods. Liab. Litig., 654 F.3d at 942.  Such a fee award is "presumptively reasonable."

17   Ching v. Siemens Industry, Inc., No. 11-cv-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June

18   27, 2014) (citing In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d at 942).  Second, "[n]othing

19   in this case requires departure from the 25 percent standard award."  Six (6) Mexican Workers v.

20   Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).  Indeed, no class member has

21   objected to the proposed settlement or proposed fee award.  ECF No. 105 ¶¶ 9–10; see Ching,

22   2014 WL 2926210, at *8.  Finally, the result achieved by Class Counsel—an approximately 20%

23   recovery of the maximum recoverable damages—and the risk of non-recovery, discussed *supra*

24   Part II.B.2.a and II.B.2.b, justify the result.

25   Moreover, the Court has cross-checked this award against the lodestar recovery.  The

26   Court has reviewed the documentation provided by Class Counsel and has calculated the

27   anticipated lodestar to be $1.438 million, resulting in a multiplier of 0.87.  See ECF No. 101 at

28   14–18; ECF No. 101-6; ECF No. 102, Ex. 2.  This multiplier confirms the reasonableness of the

United States District Court
Northern District of California

1    award.  Because class counsel has provided documentation substantiating the fees they request,

2    and the Court has verified under both the lodestar method and the percentage-recovery method

3    that the amount of requested fees is reasonable, the Court awards a total of $1,250,000 to

4    Plaintiffs' Counsel.

5    **V.     EXPENSES**

6         **A.     Legal Standard**

7         An attorney is entitled to "recover as part of the award of attorney's fees those out-of-

8    pocket expenses that would normally be charged to a fee paying client."  Harris v. Marhoefer, 24

9    F.3d 16, 19 (9th Cir. 1994) (citation omitted).  To support an expense award, Plaintiffs should file

10   an itemized list of their expenses by category and the total amount advanced for each category,

11   allowing the Court to assess whether the expenses are reasonable.  Wren v. RGIS Inventory

12   Specialists, No. C-06-05778 JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011),

13   supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

14        **B.     Analysis**

15        Here, Plaintiffs have provided an itemized list of the costs incurred during this litigation,

16   separated by category.  ECF No. 101-7; ECF No. 102, Ex. 2.  Most of the expenses incurred

17   resulted from legal research and expert consulting fees.  Id.  Overall, the Court finds the charged

18   costs reasonable.  The Court therefore holds that Class Counsel is entitled to reimbursement of

19   $44,874.35.

20   **VI.    CONCLUSION**

21        For the foregoing reasons, the Court orders as follows:

22        1.     For the reasons set forth in its June 28, 2015 order, ECF No. 97, the Court confirms
                its certification of the class for settlement purposes only.
23

24        2.     For the reasons set forth in its June 28, 2015 order, ECF No. 97, the Court confirms
                its appointment of Girard Gibbs as Class Counsel.

25        3.     The Court grants final approval of the proposed settlement.

26        4.     The Court grants Plaintiffs' counsel $1,250,000 in attorneys' fees.

27        5.     The Court grants Plaintiffs' counsel $44,874.35 in litigation expenses.

28   / / /

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

6.    The class member who asked to opt out of the settlement is excluded from the class.

IT IS SO ORDERED.

Dated: October 15, 2015



_____
JON S. TIGAR
United States District Judge

14